## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,  )<br><br>*Plaintiff*,  )<br><br>v.  )<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN  )<br>SERVICES, et al.,  )<br><br>*Defendants.*  )  ) | Case No. 17-cv-00827 (EGS) |

## MOTION FOR SUMMARY JUDGMENT OF THE COMMITTEE ON WAYS AND MEANS OF THE U.S. HOUSE OF REPRESENTATIVES

Pursuant to Federal Rule of Civil Procedure 56, prospective defendant-intervenor the Committee on Ways & Means of the U.S. House of Representatives respectfully moves for summary judgment with respect to its affirmative defense on the ground that four documents at issue in this case (OMB-American Oversight-000988 to 001030; HHS-Sept 2017-01621 to 01623; HHS-Sept 2017-01624 to 01627; HHS-Sept 2017-01628 to 01635) are congressional records and therefore not subject to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  In support of its motion, the Committee submits the following memorandum of points and authorities.

Respectfully submitted,

Thomas G. Hungar,
   *General Counsel* (DC Bar #447783)
Eleni M. Roumel,
   *Assistant General Counsel*
Kristin A. Shapiro,
   *Assistant General Counsel* (DC Bar #1007010)

OFFICE OF GENERAL COUNSEL[*]
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Thomas.Hungar@mail.house.gov

*Counsel for the Committee on Ways and Means
 of the U.S. House of Representatives*

September 19, 2017

---

[*] Attorneys in the U.S. House of Representatives Office of General Counsel are "entitled, for the purpose of performing the counsel's functions, to enter an appearance in any proceeding before any court of the United States or of any State or political subdivision thereof without compliance with any requirements for admission to practice before such court."  2 U.S.C. § 5571(a).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-00827 (EGS) |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF THE
COMMITTEE ON WAYS AND MEANS OF THE U.S. HOUSE OF
REPRESENTATIVES**

Thomas G. Hungar,
   *General Counsel* (DC Bar #447783)
Eleni M. Roumel,
   *Assistant General Counsel*
Kristin A. Shapiro,
   *Assistant General Counsel* (DC Bar #1007010)

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Thomas.Hungar@mail.house.gov

*Counsel for the Committee on Ways and Means
  of the U.S. House of Representatives*

September 19, 2017

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION .......................................................................................................... 1

FACTS ........................................................................................................................ 1

    A.    Procedural History ...................................................................................... 1

    B.    The Legended Documents .......................................................................... 3

ARGUMENT ................................................................................................................. 4

    THE LEGENDED DOCUMENTS ARE CONGRESSIONAL RECORDS
    AND NOT SUBJECT TO FOIA. ................................................................................ 4

    A.    Congressional Records Are Not Subject To FOIA. .................................... 4

    B.    The Legended Documents Are Congressional Records ............................. 8

        1.    The OMB Document Is A Congressional Record ..................... 9

        2.    The HHS Documents Are Congressional Records .................... 9

CONCLUSION ............................................................................................................ 11

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Am. Civil Liberties Union v. CIA ("ACLU"),*
    823 F.3d 655 (D.C. Cir. 2016)..........................................................................4, 5, 8, 9, 10

*Goland v. CIA,*
    607 F.2d 339 (D.C. Cir. 1978)..........................................................................................6, 7

*Holy Spirit Ass'n v. CIA,*
    636 F.2d 838 (D.C. Cir. 1980)........................................................................................5, 10

*Judicial Watch, Inc. v. U.S. Secret Serv.,*
    726 F.3d 208 (D.C. Cir. 2013)............................................................................................5

*Paisley v. CIA,*
    712 F.2d 686 (D.C. Cir. 1983)............................................................................................7

*United We Stand Am., Inc. v. IRS,*
    359 F.3d 595 (D.C. Cir. 2004)..................................................................................6, 7, 8, 9, 10

<u>**Statutes**</u>

5 U.S.C. § 552.......................................................................................................................1

## INTRODUCTION

Four of the documents at issue in this Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, case are congressional records that bear legends manifesting clear congressional intent to retain control of those documents (the "Legended Documents").[1]   Prospective defendant-intervenor the Committee on Ways & Means of the U.S. House of Representatives has moved to intervene in this case in order to advance the House's institutional interests in the proper treatment of such congressional records, and has asserted the affirmative defense that plaintiff American Oversight is not entitled to compel production of these congressional records because they are not subject to FOIA.   The Committee respectfully submits that summary judgment should be granted in its favor on that affirmative defense.

## FACTS

### A.  Procedural History

According to the allegations of plaintiff American Oversight's complaint, this action arises out of two FOIA requests submitted by plaintiff to defendants the Department of Health and Human Services ("HHS") and the Office of Management and Budget ("OMB") (collectively, "defendants").   Specifically, on March 15, 2017, plaintiff submitted a request to HHS seeking, from January 20, 2017, to the date of the search:

> (1) All communications, meeting notices, meeting agendas, informational material, draft legislation, talking points, or other materials exchanged between HHS and any members of Congress or congressional staff relating to health care reform.

> (2) All calendar entries for the Secretary, any political or SES appointees in the Secretary's office, and the Acting Assistant Secretary for Legislation, or anyone maintaining calendars on behalf of these individuals, relating to health care reform.

---

[1] The Legended Documents (OMB-American Oversight-000988 to 001030; HHS-Sept 2017-01621 to 01623; HHS-Sept 2017-01624 to 01627; HHS-Sept 2017-01628 to 01635) are attached as Exhibits A-D to the Declaration of Allison E. Halataei, filed concurrently herewith.

For calendar entries created in Outlook or similar programs, the documents should
be produced in "memo" form to include all invitees, any notes, and all attachments.

Compl. Ex. A at 2 (ECF No. 1-1).  Subsequently, plaintiff submitted a similar request to OMB

seeking, from January 20, 2017, to the date of the search:

> (1) All communications, meeting notices, meeting agendas, informational material,
> draft legislation, talking points, or other materials exchanged between OMB and
> any members of Congress or congressional staff relating to health care reform.
>
>  (2) All calendar entries for the Director, any political or SES appointees in the
> Director's office, and the Acting Head of Legislative Affairs, or anyone
> maintaining calendars on behalf of these individuals, relating to health care reform.
> For calendar entries created in Outlook or similar programs, the documents should
> be produced in "memo" form to include all invitees, any notes, and all attachments.

Compl. Ex. B at 2 (ECF No. 1-2).

Plaintiff sought expedited processing of both requests.  Compl. Ex. A at 6-7; Compl.

Ex. B. at 6-8.  On April 4, 2017, OMB sent a letter to plaintiff denying the request for expedited

processing.  Compl. Ex. C (ECF No. 1-3).  According to the complaint, HHS had not reached a

decision as to plaintiff's request for expedited processing as of the time that plaintiff filed its

complaint.  Compl. ¶¶ 25-28.

Plaintiff filed the instant lawsuit on May 4, 2017.  The complaint alleges five counts under

FOIA.  Counts 1 through III allege claims based on defendants' purportedly wrongful denial of

expedited processing.  Compl. ¶¶ 36-56.  Count IV alleges a claim based on defendants' purported

failure to conduct an adequate search for responsive records.  *Id.* ¶¶ 57-62.  And Count V alleges

a claim based on defendants' purported withholding of non-exempt records.  *Id.* ¶¶ 63-68.  The

complaint therefore requests, *inter alia*, that the Court order defendants to expedite the processing

of the requests, conduct a search reasonably calculated to uncover all responsive records, and

produce any and all responsive, non-exempt records.  Compl. at 12.  The same day it filed the

complaint, plaintiff filed a motion for a preliminary injunction seeking to compel defendants to

expedite the processing of the requests and produce all requested records without delay. (ECF No. 2.)

On May 9, 2017, the Court *sua sponte* scheduled a status hearing for May 10, 2017. Minute Order, May 9, 2017. At that hearing, the Court directed the parties to confer in good faith about defendants' search terms and to provide a recommendation as to further proceedings. *Id.* In light of the parties' subsequent recommendations, on May 25, 2017, the Court ordered HHS to review and process 11,000 pages of records and OMB to review and process 2,348 pages of records. Minute Order, May 25, 2017. The Court further ordered a rolling production schedule, concluding on September 5, 2017, that required defendants to review the documents and produce any non-exempt and responsive material. *Id.* Finally, the Court set a schedule for briefing the parties' anticipated summary judgment motions pursuant to which defendants were to file their motion for summary judgment by September 19, 2017. *Id.*

Defendants produced numerous documents in response to the Court's order. Included within the final round of this production, which occurred on September 5, 2017, are the Legended Documents, described in detail below, which defendants produced in part, even though they are congressional records and are therefore not subject to FOIA. On September 15, 2017, the Committee filed a motion to intervene in these proceedings in order to assert the affirmative defense that the Legended Documents are congressional records not subject to disclosure under FOIA. (ECF No. 19.)

## B. The Legended Documents

The Committee's summary judgment motion concerns only the Legended Documents in the agencies' productions: one from OMB (Halataei Decl. Ex. A, OMB-American Oversight-

3

000988 to 001030) and three from HHS (Halataei Decl. Exs. B-D, HHS-Sept 2017-01621 to 01623; HHS-Sept 2017-01624 to 01627; HHS-Sept 2017-01628 to 01635).

The OMB document is an email dated April 4, 2017, from Emily Murry, a Committee staff member, to Joseph Grogan, the Associate Director of Health Programs at OMB, at the top of a chain of emails between Ms. Murry and Mr. Grogan.  Statement of Material Facts Not In Dispute ("SOF") ¶¶ 1-3.  At the bottom of Ms. Murry's email is the following legend:

> This document and any related documents, notes, draft and final legislation, recommendations, reports, or other materials generated by the Members or staff of the Committee on Ways and Means are records of the Committee, remain subject to the Committee's control, and are entrusted to your agency only for use in handling this matter. Any such documents created or compiled by an agency in connection with any response to this Committee document or any related Committee communications, including but not limited to any replies to the Committee, are also records of the Committee and remain subject to the Committee's control. Accordingly, the aforementioned documents are not "agency records" for purposes of the Freedom of Information Act or other law.

SOF ¶ 4.

The HHS documents are all emails dated April 1, 2017, from Sarah Arbes, an HHS employee, to several Committee staff members, including Emily Murry and Stephanie Parks, at the top of a chain of emails between Ms. Arbes and Committee staff members.  SOF ¶¶ 1, 5-8. Included earlier in the chain are emails from Ms. Parks to the group, dated March 30 and April 1, 2017, that include the same legend quoted above.  SOF ¶¶ 9, 10.

## ARGUMENT

## THE LEGENDED DOCUMENTS ARE CONGRESSIONAL RECORDS AND NOT SUBJECT TO FOIA.

### A.  Congressional Records Are Not Subject To FOIA.

"[S]ubject to certain statutory exemptions, FOIA requires federal agencies to make *agency records* available to the public upon reasonable request."  *Am. Civil Liberties Union v. CIA ("ACLU")*, 823 F.3d 655, 661 (D.C. Cir. 2016) (emphasis added).  It is clear, however, that "not

all documents in the possession of a FOIA-covered agency are 'agency records' for purposes of the Act." *Id.* at 662 (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 216 (D.C. Cir. 2013)).  Typically, courts apply a four-factor test "to determine whether an agency has sufficient control over a document to make it an 'agency record'": "[1] the intent of the document's creator to retain or relinquish control over the records; [2] the ability of the agency to use and dispose of the record as it sees fit; [3] the extent to which agency personnel have read or relied upon the document; and [4] the degree to which the document was integrated into the agency's record system or files." *ACLU*, 823 F.3d at 662 (quoting *Judicial Watch*, 726 F.3d at 218).

This test, however, "does not apply to documents that an agency has either obtained from, or prepared in response to a request from, a governmental entity not covered by FOIA: the United States Congress." *ACLU*, 823 F.3d at 662 (quoting *Judicial Watch*, 726 F.3d at 221).  Rather, when an agency possesses a document that it has obtained from Congress or prepared in response to a communication from Congress, "the answer to the question whether the document is an 'agency record' subject to disclosure under FOIA '"turns on whether Congress manifested a clear intent to control the document."'" *ACLU*, 823 at 663 (citation omitted).  Notably, this test does not require "Congress to act in a particular way in order to preserve its FOIA exemption for transferred documents." *Holy Spirit Ass'n v. CIA*, 636 F.2d 838, 842 (D.C. Cir. 1980), *vacated in part on other grounds*, 455 U.S. 997 (1982).  Rather, the *only* question is whether there has been "some clear assertion of congressional control" over the document.  *Id.*

This deferential test arises from "special policy considerations" that "counsel in favor of according due deference to Congress' affirmatively expressed intent to control its own documents." *ACLU*, 823 F.3d at 662 (quoting *Judicial Watch*, 726 F.3d at 221).  The "policy considerations unique to the congressional context" include the fact that "Congress exercises over-

sight authority over the various federal agencies, and thus has an undoubted interest in exchanging documents with those agencies to facilitate their proper functioning in accordance with Congress' originating intent." *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 599 (D.C. Cir. 2004); *id.* (quoting *Goland v. CIA*, 607 F.2d 339, 346 (D.C. Cir. 1978)).  "Holding otherwise … would force Congress 'either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role.'" *United We Stand*, 359 F.3d at 595 (quoting *Goland*, 607 F.3d at 346).

D.C. Circuit case law demonstrates the wide variety of circumstances in which Congress has sufficiently manifested such an intent to retain control of congressional records in the possession of Executive Branch agencies.  For example, in *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978), the D.C. Circuit held that a transcript of a confidential congressional hearing that was in the CIA's possession was not an agency record subject to FOIA.  *Id*. at 347.  The Court relied on the fact that, "[w]hen received by the CIA, the [t]ranscript bore the typewritten marking 'Secret' on its interior cover page," a marking that "appear[ed] to have been appended at the time the [t]ranscript was made."  *Id.*  The court therefore concluded "that the Hearing Transcript is not an 'agency record' but a congressional document to which FOIA does not apply," because "on all the facts of the case Congress's intent to retain control of the document is clear."  *Id.* at 348.  Under these circumstances, "the decision to make the transcript public should be made by [Congress], not the recipient agency."  *Id.* at 347.

Importantly, in responding to arguments put forth by the dissent, the *Goland* court expressly recognized the committee's unilateral authority to preserve the status of documents as congressional records by clearly manifesting its intent to that effect.  As the court emphasized, "Congress has broad powers to keep its documents secret," and "when Congress transfers secret

documents to an agency, for a limited purpose and on condition of secrecy," there is "no reason to think it thereby waives its own prerogatives of confidentiality and resigns itself to the FOIA exemptions which bind the agency and not it." *Goland*, 607 F.2d at 348 n.48. Accordingly, *Goland* squarely holds that, when a document "bears clear indicia of a congressional purpose to ensure secrecy," such "*indicia of Congress' continuing control … are dispositive of a document's 'congressional' status*." *Id*. (emphasis added).

The D.C. Circuit has repeatedly reaffirmed the principles enunciated in *Goland* in subsequent cases. In *Paisley v. CIA*, 712 F.2d 686 (D.C. Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984), for example, the court of appeals noted that "this court has followed the standards set forth in *Goland* … for determining under what conditions documents in the possession of an agency may nonetheless be congressional documents, as opposed to agency records, and so be exempt from disclosure under FOIA[.]" *Id*. at 692. The *Paisley* court reiterated that the dispositive issue is whether Congress has manifested its intent with sufficient specificity: "*Goland*'s explicit focus on Congress' intent to control (and not on the agency's) reflects those special policy considerations which counsel in favor of according due deference to Congress' affirmatively expressed intent to control its own documents," thereby "safeguard[ing] Congress' long-recognized prerogative to maintain the confidentiality of its own records as well as its vital function as overseer of the Executive Branch." *Id*. at 693 n.30.

Likewise, in *United We Stand America v. IRS*, 359 F.3d 595 (D.C. Cir. 2004), the D.C. Circuit held that portions of a document created by and in the possession of the IRS were not an agency record subject to FOIA, because Congress had manifested its intent to control that information. *Id*. at 605. In that case, the requester sought "a document the Internal Revenue Service created in response to" a letter from the Joint Committee on Taxation ("JCT"). *Id.* at 597.

JCT's letter contained a legend stating that "[t]his document is a Congressional record and is entrusted to the Internal Revenue Service for your use only" and "may not be disclosed without the prior approval of the Joint Committee."  *Id.*  The D.C. Circuit held that JCT had sufficiently manifested its intent to control not only JCT's letter request, but also "the portions of the [IRS] response that would reveal that request."  *Id.* at 605.

Most recently, in *American Civil Liberties Union v. CIA*, 823 F.3d 655 (D.C. Cir. 2016), the D.C. Circuit held that a report of the Senate Select Committee on Intelligence ("SSCI") that was in the CIA's possession was not an agency record subject to FOIA.  *Id.* at 667-68.  The report itself contained no legend or confidentiality stamp, and in fact SSCI had transmitted the report to the President in 2014 with a letter stating that it "should be made available within the CIA and other components of the Executive Branch for use as broadly as appropriate to help make sure that this experience is never repeated."  *Id.* at 667.  At the start of its investigation in 2009, however, SSCI had sent a letter to the CIA stating that "any other notes, documents, draft and final recommendations, reports or other materials generated by Committee staff or Members, are the property of the Committee," and that "[t]hese documents remain congressional records in their entirety and disposition and control over these records, even after the completion of the Committee's review, lies exclusively with the Committee."  *Id.* at 665 (emphasis omitted).  The D.C. Circuit held that the "expansive language" in this letter clearly manifested SSCI's intent to retain control of the report, and thus the report constituted "a congressional document that is not subject to disclosure under FOIA."  *Id.* at 665, 667-68.

### B.  The Legended Documents Are Congressional Records

The four Legended Documents at issue here are plainly congressional records under the foregoing D.C. Circuit precedents.  Indeed, the Committee has manifested its intent to control

these documents in the most straightforward way possible: by including a legend on its communications with the agencies clearly stating its intent to retain control over the Committee's communications with the agencies and the agencies' responses.  SOF ¶¶ 4, 9, 10.

   *1.  The OMB Document Is A Congressional Record*

   As an initial matter, the Committee has "manifested a clear intent to control" the OMB document (Halataei Decl. Ex. A, OMB-American Oversight-000988 to 001030).  *ACLU*, 823 F.3d at 663 (citation omitted).  This document is an email from a Committee staff member to an OMB employee bearing a legend.  SOF ¶¶ 1-4.  As relevant here, the legend states that "[t]his document … [is a] record[] of the Committee, remain[s] subject to the Committee's control, and [is] entrusted to your agency only for use in handling this matter."   SOF ¶ 4.

   Indeed, the Committee's manifestation of intent here is even stronger than in *ACLU*.  As explained, *see* p. 8, *supra*, that case concerned a legend in a 2009 letter from SSCI to CIA stating that "any … reports or other materials generated by Committee staff or Members … are the property of the Committee" and "remain congressional records in their entirety."  *ACLU*, 823 F.3d at 665 (emphasis omitted).  The Court held that the "expansive language" in that legend clearly established SSCI's intent to retain control over an SSCI report transmitted to the President *five years later*, in 2014, notwithstanding the fact that the report itself contained no legend.  *Id.* at 665, 667-68.  By contrast, in this case, the OMB document itself bears the legend.  *See United We Stand*, 359 F.3d at 600 (holding that JCT legend provided "sufficient indicia of congressional intent to control" JCT's letter request).

   *2.  The HHS Documents Are Congressional Records*

   The Committee has likewise "manifested a clear intent to control" the HHS documents at issue (Halataei Decl. Exs. B-D, HHS-Sept 2017-01621 to 01623; HHS-Sept 2017-01624 to 01627;

HHS-Sept 2017-01628 to 01635). *ACLU*, 823 F.3d at 663 (citation omitted). These documents are emails from an HHS employee to Committee staff members at the top of an email chain that includes Committee communications bearing a legend. SOF ¶¶ 5-10. As relevant here, the legend states that "[t]his document and any related documents … generated by the Members or staff of the Committee … are records of the Committee, remain subject to the Committee's control, and are entrusted to your agency only for use in handling this matter." SOF ¶¶ 9, 10. The legend further states that "[a]ny such documents created or compiled by an agency in connection with any response to this Committee document or any related Committee communications … are also records of the Committee and remain subject to the Committee's control." SOF ¶ 9, 10.

The law is clear that Congress may manifest its intent to control not only documents that an agency has obtained from Congress, but also documents that an agency has "prepared in response to a request from" Congress. *ACLU*, 823 F.3d at 662. Thus, in *United We Stand*, the D.C. Circuit noted that prior case law had "recognized the possibility that agency-created documents could in fact become congressional records." 359 F.3d at 595 (citing *Holy Spirit Ass'n*, 636 F.2d at 842-43). The *United We Stand* court reiterated that principle, holding that the portions of the IRS response to a JCT request "that would reveal that request" were congressional records. 359 F.3d at 605. In light of the "limited scope" of the legend used by JCT in that case, which did not assert congressional control over responses, the D.C. Circuit concluded that the other portions of the IRS response were not congressional records. *Id.* at 600-01, 605. The Court made clear, however, that "[i]f [JCT] intended to keep confidential not just 'this document' but also the IRS response, *it could have done so by referring to 'this document and all IRS documents created in response to it'*" in its legend. *Id.* at 601.

In this case, the Committee has followed precisely the guidance set forth in *United We Stand*. The Committee's legend asserts control not only over its own communications, but also over the agencies' response. Accordingly, the Committee has manifested a clear intent to control the HHS documents, and D.C. Circuit case law compels the conclusion that those documents are congressional records and are not subject to FOIA.

## CONCLUSION

For the reasons set forth above, the Legended Documents (OMB-American Oversight-000988 to 001030; HHS-Sept 2017-01621 to 01623; HHS-Sept 2017-01624 to 01627; HHS-Sept 2017-01628 to 01635) are congressional records and therefore not subject to FOIA. Accordingly, plaintiff is not entitled to any relief as to these documents, and the Court should grant summary judgment in favor of the Committee with respect to its affirmative defense.

Respectfully Submitted,

*/s/ Thomas G. Hungar*
Thomas G. Hungar,
    *General Counsel* (DC Bar #447783)
Eleni M. Roumel,
    *Assistant General Counsel*
Kristin A. Shapiro,
    *Assistant General Counsel* (DC Bar #1007010)

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Thomas.Hungar@mail.house.gov

*Counsel for the U.S. House of Representatives*
 *Committee on Ways & Means*

September 19, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2017, I caused the foregoing Motion to Intervene and Memorandum in Support of the Motion to Intervene to be filed via the U.S. District Court for the District of Columbia's CM/ECF system, which I understand caused a copy to be served on registered CM/ECF users:

                                        */s/ Thomas G. Hungar*
                                        Thomas G. Hungar