## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>*Defendants,*<br><br>COMMITTEE ON WAYS & MEANS OF THE U.S. HOUSE OF REPRESENTATIVES,<br><br>*Defendant-Intervenor.* | Case No. 17-cv-00827 (EGS) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF THE COMMITTEE ON WAYS AND MEANS OF THE U.S. HOUSE OF REPRESENTATIVES AND IN OPPOSITION TO AMERICAN OVERSIGHT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Thomas G. Hungar,
   *General Counsel* (DC Bar #447783)
Eleni M. Roumel,
   *Assistant General Counsel* (NY Bar #3978863)
Kristin A. Shapiro,
   *Assistant General Counsel* (DC Bar #1007010)

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Thomas.Hungar@mail.house.gov

*Counsel for the Committee on Ways and Means
 of the U.S. House of Representatives*

November 3, 2017

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................2

THE LEGENDED DOCUMENTS ARE CONGRESSIONAL RECORDS
AND NOT SUBJECT TO FOIA ......................................................................................2

    A.  The Legended Documents Are Congressional Records Because
        Congress Has Clearly Manifested An Intent
        To Control the Documents ................................................................................2

    B.  American Oversight's Attempts To Add Additional Requirements To
        The Congressional-Records Test Are Foreclosed
        By D.C. Circuit Precedent ...............................................................................5

        1.  *Congress Need Not Manifest Its Intent To Control Contemporaneously*
            *With The Creation Or Transmission*
            *Of The Documents At Issue* ...................................................................6

        2.  *Congress Need Not Manifest Its Intent To Control*
            *In A Particular Manner* .........................................................................8

        3.  *Congress's Manifestation Of Control Does Not Depend*
            *On An Agency's Conduct Or Consent* .....................................................11

        4.  *Congressional Records Need Not Relate To Oversight* .............................13

    C.  American Oversight Is Not Entitled To Discovery Before Summary Judgment
        Is Entered In Favor Of The Committee ...........................................................16

CONCLUSION................................................................................................................16

# TABLE OF AUTHORITIES

## Cases

\*     *ACLU v. CIA ("ACLU II"),*
       823 F.3d 655 (D.C. Cir. 2016) ....................................................1, 3, 4, 5, 6, 7, 9, 12, 13, 15

*ACLU v. CIA ("ACLU I"),*
       105 F. Supp. 3d 35 (D.D.C. 2015) .................................................................................6, 12

*Burka v. HHS,*
       87 F.3d 508 (D.C. Cir. 1996) .............................................................................................3

*Cause of Action v. Nat'l Archives & Records Admin.,*
       753 F.3d 210 (2014) ................................................................................................... 5, 11-12

*DOJ v. Tax Analysts,*
       492 U.S. 136 (1989) ....................................................................................................2, 3, 4

*Forsham v. Harris,*
       445  169 (1980) ...................................................................................................................3

\*     *Goland v. CIA,*
       607 F.2d 339 (D.C. Cir. 1978) ..............................................2, 6, 10, 11, 12, 13, 14, 15, 16

\*     *Holy Spirit Ass'n for the Unification of World Christianity v. CIA,*
       636 F.2d 838 (D.C. Cir. 1980) .................................................................................2, 6, 7, 9

\*     *Judicial Watch, Inc. v. U.S. Secret Serv.,*
       726 F.3d 208 (D.C. Cir. 2013) .....................................................................3, 4, 5, 10, 12

*Kissinger v. Reporters Comm. for Freedom of the Press,*
       445 U.S. 136 (1980) ...........................................................................................................4

*McGrain v. Daugherty,*
       273 U.S. 135 (1927) .....................................................................................................13, 14

\*     *Paisley v. CIA,*
       712 F.2d 686 (D.C. Cir. 1983) ..................................................................4, 7, 11, 12, 15

\*     *United We Stand Am., Inc. v. IRS,*
       359 F.3d 595 (D.C. Cir. 2004) ............................................1, 3, 4, 5, 7, 8, 9, 11, 12, 13, 15

**<u>Other Authorities</u>**

Rules of the House of Representatives (115th Cong.), Rule X.2 ...................................................14

Rules of the Committee on Ways & Means (115th Cong.), Rule 22.............................................11

## INTRODUCTION

The Legended Documents are plainly congressional records and therefore not subject to FOIA under controlling D.C. Circuit precedent.[1]  The law is crystal clear that when an agency possesses a document that it has obtained from or prepared in response to a request from Congress, "the answer to the question whether the document is an 'agency record' subject to disclosure under FOIA turns on whether Congress manifested a clear intent to control the document."  *ACLU v. CIA ("ACLU II")*, 823 F.3d 655, 663 (D.C. Cir. 2016) (quoting *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 596 (D.C. Cir. 2004)).  And the Committee's manifestation of control here is textbook:  The Legended Documents bear a legend explicitly stating the Committee's intent to control the documents.  By affixing the legend to the documents, "[t]he Committee effectively stamped its control" over them.  *ACLU II*, 823 F.3d at 666.

American Oversight's strained attempts to circumvent this controlling caselaw are wholly unpersuasive.  *First*, American Oversight eschews the D.C. Circuit's congressional-records test altogether, even claiming that it conflicts with Supreme Court precedent.  Pl.'s Mem. in Support of Cross Mot. for Summ. J. (ECF No. 30-1) ("Pl.'s Mem.") at 31-33, 44.  The D.C. Circuit, however, has already concluded that its test is fully consistent with Supreme Court precedent, and this Court is, of course, bound by the D.C. Circuit's rulings.

*Second*, American Oversight attempts to graft onto the congressional-records test a number of additional requirements that are simply not part of the test and that the D.C. Circuit has already rejected.  For example, American Oversight claims (incorrectly) that some of the Legended Documents bear no "contemporaneous" claim of confidentiality.  Pl.'s Mem. at 33.  But the D.C.

---

[1]  The Legended Documents (OMB-American Oversight-000988 to 001030; HHS-Sept 2017-01621 to 01623; HHS-Sept 2017-01624 to 01627; HHS-Sept 2017-01628 to 01635) are attached as Exhibits A-D to the Declaration of Allison E. Halatatei, filed on September 19, 2017, in support of the Committee's motion for summary judgment (ECF No. 21-4).

1

Circuit has specifically rejected the argument that "Congress must give contemporaneous instructions when forwarding congressional records to an agency." *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838, 842 (D.C. Cir. 1980), *vacated in part on other grounds*, 455 U.S. 997 (1982). American Oversight also argues that Congress "*as a body*" must act to manifest control over a document, and thus that legends affixed by Committee staff members are insufficient. Pl.'s Mem. at 37. But the D.C. Circuit has held that "the identity of the classifier … [is] irrelevant" to the determination of whether a document is a congressional record. *Goland v. CIA*, 607 F.2d 339, 347 n.45 (D.C. Cir. 1978). As explained below, the other supposed requirements identified by American Oversight for the congressional-records test are equally unfounded.

Accordingly, the Committee respectfully submits that the Court should grant summary judgment in favor of the Committee with respect to its affirmative defense that American Oversight is not entitled to compel production of these congressional records, and deny American Oversight's cross-motion for summary judgment with respect to these documents.

## ARGUMENT

## THE LEGENDED DOCUMENTS ARE CONGRESSIONAL RECORDS AND NOT SUBJECT TO FOIA.

### A. The Legended Documents Are Congressional Records Because Congress Has Clearly Manifested An Intent To Control the Documents.

American Oversight's primary argument in opposition to the Committee's summary judgment motion is nothing less than a request for this Court to ignore binding D.C. Circuit precedent. Pl.'s Mem. at 31-33, 44. Specifically, American Oversight notes that in *DOJ v. Tax Analysts*, 492 U.S. 136 (1989), the Supreme Court established a two-part test for determining whether a document is an "agency record" subject to FOIA, a test that requires: (1) that the agency

"either create or obtain" the document, and (2) that the agency "be in control" of the document "at the time the FOIA request is made."  492 U.S. at 144-45 (quoting *Forsham v. Harris*, 445 U.S. 169, 181 (1980)).  American Oversight also notes that "[t]he DC Circuit has used a four-factor test to evaluate whether an agency exercises 'sufficient control' over a document to satisfy the second prong of *Tax Analysts*."  Pl.'s Mem. at 32 (citing *Burka v. HHS*, 87 F.3d 508, 515 (D.C. Cir. 1996)).  That four-factor test considers: "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files."  *Burka*, 87 F.3d at 515 (citation omitted).  American Oversight then proceeds to analyze the "control" issue in this case under this four-part test, contending that it is not satisfied here.  Pl.'s Mem. at 32-33.

But although one would not know it from reading American Oversight's brief, the D.C. Circuit has squarely, expressly, and repeatedly rejected American Oversight's suggestion that the four-part test should be applied in determining whether documents qualify as congressional records:  "In a series of cases stretching from 1978 to 2004, this circuit has indicated that the standard, four-factor control test *does not apply* to documents that an agency has either obtained from, or prepared in response to a request from, a governmental entity not covered by FOIA: the United States Congress."  *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 221 (D.C. Cir. 2013) (emphasis added) (citing *United We Stand*, 359 F.3d at 599); *ACLU II*, 823 F.3d at 662-63 (same).  Instead, when an agency possesses such a document, "the answer to the question whether

the document is an 'agency record' subject to disclosure under FOIA turns on whether Congress manifested a clear intent to control the document." *ACLU II*, 823 F.3d at 663.[2]

Contrary to American Oversight's contention, Pl.'s Mem. at 44, the D.C. Circuit has also made clear that its congressional-records test is fully consistent with *Tax Analysts* and related Supreme Court precedent. Indeed, the agency "control" prong of the *Tax Analysts* test was derived from the Supreme Court's decision in *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980); *see Tax Analysts*, 492 U.S. at 145 (citing *Kissinger*, 445 U.S. at 157), and the D.C. Circuit has long recognized that "*Kissinger*'s focus on the control exercised by the possessor agency is not incompatible with *Goland*'s focus on Congress' intent to control," *Paisley v. CIA*, 712 F.2d 686, 693 (D.C. Cir. 1983), *vacated in part on other grounds*, 724 F.2d 201, 204 (D.C. Cir. 1984)); *see id.* ("[W]e hold that our *Goland* approach has survived and is consistent with the *Kissinger* decision."). *Tax Analysts*' reiteration of the *Kissinger* approach did nothing to change that rule, because "*Tax Analysts* did not present the problem of a non-FOIA entity exerting control over documents in the hands of a FOIA agency." *Judicial Watch*, 726 F.3d at 222 n.15; *see United We Stand*, 359 F.3d at 599 ("For one thing, the connection between Congress and the

---

[2]   American Oversight suggests that the Court should disregard the congressional-records test because the Executive Branch has not "agreed that the records at issue were under Congress's control and consequently refused to produce them." Pl.'s Mem. at 32 n.13. But the caselaw imposes no such requirement; to the contrary, the D.C. Circuit has held that the congressional-records test applies "to documents that an agency has either obtained from, or prepared in response to a request from … Congress." *Judicial Watch*, 726 F.3d at 221; *ACLU II*, 823 F.3d at 662-63 (same). The Legended Documents are documents that Defendants have obtained from or prepared in response to a communication from the Committee, and thus the test clearly applies. Moreover, as explained more fully below, the D.C. Circuit has made clear that the agency's assertion of control, or lack thereof, over a document is irrelevant. *See* pp. 11-13, *infra*.

requested records implicates considerations not at issue in *Tax Analysts*, where a non-profit organization sought disclosure of judicial opinions possessed by the Department of Justice.").[3]

In this case, the Committee plainly has satisfied the D.C. Circuit's congressional-records test. As explained more fully in the Committee's motion for summary judgment, the Committee included a legend on its communications with Defendants that expressly asserts congressional control over "[t]his document and any related documents," and "[a]ny such documents created" by Defendants "in connection with any response to this Committee document or any related Committee communications, including but not limited to any replies to the Committee." *See* Comm. Mem. in Supp. of Summ. J. (ECF No. 21-2) ("Comm. Mem.") at 8-11; Comm. Statement of Material Facts Not in Dispute (ECF No. 21-3) ("SOF") ¶¶ 4, 9-10. This legend "effectively stamped [the Committee's] control" over the Legended Documents. *ACLU II*, 823 F.3d at 666; *see United We Stand*, 359 F.3d at 600 (holding that Joint Committee on Taxation ("JCT") legend provided "sufficient indicia of congressional intent to control" JCT's letter request).

### B. American Oversight's Attempts To Add Additional Requirements To The Congressional-Records Test Are Foreclosed By D.C. Circuit Precedent.

American Oversight next attempts to graft a number of nonexistent requirements onto the congressional-records test. These supposed requirements cannot be reconciled with the test itself, which simply asks "whether Congress manifested a clear intent to control the document." *ACLU II*, 823 F.3d at 663. Nor are they consistent with the overarching principle that Congress

---

[3] The D.C. Circuit has similarly held that "special policy considerations" justify a departure from the four-part test when other governmental entities that (like Congress) are not subject to FOIA transfer records to an agency. *Cause of Action v. Nat'l Archives & Records Admin.*, 753 F.3d 210, 213 (2014) ("But this test—sometimes called the *Burka* test, although *Burka* was itself quoting a vacated opinion—is an uncertain guide when 'a governmental entity not covered by FOIA' transfers records to a governmental entity that is covered." (citation omitted)); *Judicial Watch*, 726 F.3d at 221 (rejecting application of four-factor control test with respect to White House visitor logs).

need not act in "conformance with the procedural niceties of classification," *Goland*, 607 F.2d at 347 n.45, nor "act in a particular way in order to preserve its FOIA exemption for transferred documents," *Holy Spirit*, 636 F.2d at 842. Unsurprisingly, therefore, all of American Oversight's supposed requirements are specifically contradicted by D.C. Circuit precedent.

1. *Congress Need Not Manifest Its Intent To Control Contemporaneously With The Creation Or Transmission Of The Documents At Issue*

American Oversight first contends that the Committee has not sufficiently asserted control over the "portions of the email chains at issue that precede the inclusion of the [legend], and for which there is no evidence of any contemporaneous claim of confidentiality by Committee staff." Pl.'s Mem. at 33. This argument is both legally and factually wrong.

*First*, the D.C. Circuit has already rejected the argument "that Congress must give contemporaneous instructions when forwarding congressional records to an agency." *Holy Spirit*, 636 F.2d at 842; *see also ACLU v. CIA ("ACLU I")*, 105 F. Supp. 3d 35, 47 (D.D.C. 2015) (rejecting argument that "any evidence of congressional control 'must be contemporaneous with the transmission of the document'" (citation omitted)). For example, in *ACLU II*, the court held that a legend used by the Senate Select Committee on Intelligence ("SSCI") manifested that Committee's intent to retain control over a report transmitted to the President *five years later*. 823 F.3d at 665. In so holding, the court specifically rejected the argument "that, when Congress transmits documents to an agency, it must give contemporaneous instructions preserving any previous expressions of intent to control the documents in order to retain control over the documents," noting that "we rejected this proposition in *Holy Spirit*." *Id.* at 666. Indeed, the court in *Holy Spirit* explained that "Congress can assert its exemption from the FOIA; it can also reassert the exemption." 636 F.2d at 841. The exemption is lost only "if there is a request for documents

at a time when Congress has not designated the documents as falling within congressional control."

*Id.*[4]

Without explanation, American Oversight blithely states that "[t]he D.C. Circuit does not permit retroactive assertions of congressional control."  Pl.'s Mem. at 34.  American Oversight cites *United We Stand* for this point, but the cited portion of *United We Stand* stands only for the unexceptional proposition that a post-hoc "objection to disclosure" made in response to the FOIA request does not "demonstrate[] [congressional] intent to control."  359 F.3d at 602; *see also ACLU II*, 823 F.3d at 664 (noting that "post-hoc objection[s] to disclosure … cannot manifest the clear assertion of congressional control that our case law requires" (citation omitted)); *Holy Spirit*, 636 F.2d at 842 (letter that "was written as a result of the Church's FOIA request" did not manifest sufficient intent to control).  Here, of course, the Committee included the legend simultaneously with its exchange of emails with Defendants, SOF ¶¶ 4, 9-10; in no manner is the Committee relying on a post-hoc objection to disclosure.

*Second*, contrary to American Oversight's argument, the Committee's use of the legend was contemporaneous with or preceded the four Legended Documents.  As explained in the Committee's motion for summary judgment, Comm. Mem. at 3-4, the single OMB document is an email from a Committee staff member to the Associate Director of Health Programs at OMB.  SOF ¶¶ 1-3.  The Committee staff member included the legend in her email, thereby contemporaneously manifesting the Committee's intent to control the document at the time it was

---

[4]  Notably, this analysis is consistent with the second prong of *Tax Analysts*, which requires that the agency "be in control" of the document "at the time the FOIA request is made."  492 U.S. at 145.  As the D.C. Circuit has explained, "[i]f … Congress has manifested its own intent to retain control, then the agency – by definition – cannot lawfully 'control' the documents …, and hence they are not 'agency records.'"  *Paisley*, 712 F.2d at 693 (footnotes omitted); *see* p. 12, *infra*.

created and transferred to OMB.  SOF ¶ 4.  Likewise, the three HHS documents are all emails from

an HHS employee to Committee staff members, and the emails were written in response to earlier

emails from Committee staff that included the legend.  SOF ¶¶ 5-10.  The Committee's assertion

of control therefore preceded the creation of the three HHS documents at issue.[5]  Thus, even if the

law required Congress's assertion of control to be contemporaneous with or precede the creation

or transfer of the documents at issue (it does not), the Committee has satisfied this requirement.

2.   *Congress Need Not Manifest Its Intent To Control In A Particular Manner*

American Oversight next contends that the Committee's legend is a "generic [legend]

containing boilerplate language," Pl.'s Mem. at 34, and that its use by Committee staff does not

"reflect a decision by Congress *as a body*."  Pl.'s Mem. at 36-37, 36-38.  Neither argument survives

scrutiny.

The Committee's legend amply manifests its intent to control the Legended Documents.

American Oversight characterizes the legend as "boilerplate," but the language in the legend bears

remarkable similarity to the legend at issue in *United We Stand* (which could have been

characterized as "boilerplate" but was nonetheless dispositive).  Specifically, the legend at issue

in *United We Stand* stated that "[t]his document is a Congressional record and is entrusted to the

Internal Revenue Service for your use only" and that "[t]his document may not be disclosed

without the prior approval of the Joint Committee."  359 F.3d at 600-01.  The court in *United We

Stand* held that this legend sufficiently manifested JCT's intent to control not only the JCT letter

---

[5]  To be sure, all four documents are part of a chain of emails, and they reflect the fact that some
of the emails earlier in the chain do not themselves bear a legend.  But the "documents" at issue
are the four emails described above, which simply include and retransmit emails earlier in the
chain.  Whether American Oversight could compel production of an individual email in the chain
sent before the legend as a separate document is neither here nor there; the Legended Documents
themselves contain clear expressions of congressional intent to retain control of those documents
and are therefore congressional records that are not subject to FOIA.

that included the legend, but also any portions of the IRS's response that might reveal JCT's request (even though the JCT legend did not mention any IRS response). *Id.* at 605. The court additionally noted that "[i]f the Joint Committee intended to keep confidential not just 'this document' but also the IRS response, *it could have done so by referring to 'this document and all IRS documents created in response to it.'*" *Id.* at 601 (emphasis added). The Committee's legend here follows the guidance set forth in *United We Stand* and asserts control over, *inter alia*, "[t]his document" and "[a]ny response." *Id.* While American Oversight attacks this language as "boilerplate," the Court can hardly fault the Committee for accepting the express invitation of the D.C. Circuit to adopt this very language.[6]

American Oversight further contends that the legend appears to have been added to the Legended Documents "automatically by the staffer's email program." Pl.'s Mem. at 36. But it is irrelevant whether the Committee used an email program to insert the legend. As explained, Congress need not "act in a particular way in order to preserve its FOIA exemption for transferred documents." *Holy Spirit*, 636 F.2d at 842. If a committee decides that it wants to control "the entirety" of its communications with a particular agency, one of the *clearest* ways to manifest that intent would be to set up an email program affixing the legend to every email with that agency.

---

[6] American Oversight cites *Paisley* for the proposition that the legend at issue here is "too general and sweeping[.]" Pl.'s Mem. at 35 (quoting 712 F.2d at 694). But the evidence here "stands in sharp contrast to the evidence in *Paisley*," where Congress had "'affixed no external indicia of control or confidentiality on the faces of the documents.'" *ACLU II*, 832 F.3d at 666, 664 (citation omitted). Here, the Committee's use of the legend clearly manifests its intent to control all documents related to the communication to which the legend is affixed. *See id.* at 665 (noting that the legend at issue "makes it plain that the Senate Committee intended to control any and all of its work product, including the Full Report, emanating from its oversight investigation of the CIA"); *id.* ("The Letter's expansive language is clear on this point."). The Committee "could hardly have been more clear or precise in claiming control," as the inclusion of the legend "effectively stamp[s] [the Committee's] control" over the Legended Documents. *Id.* at 666.

*Judicial Watch*, 726 F.3d at 223.  In such a case, "[t]he expression of that intent [would not be] merely 'general,'" but rather would clearly "extend[] to each of the 'particular records' at issue." *Id.* (citations omitted) (holding that the White House's assertion of control over "the entirety" of White House visitor logs was not "general" because it "explicitly extends to" all visitor logs).[7]

Finally, American Oversight's assertion that Congress must act "*as a body*" to manifest control over a particular document, which is supported by nothing but American Oversight's own *ipse dixit*, is patently wrong.  Pl.'s Mem. at 37.  In American Oversight's view, in order for Congress to manifest control over a particular document, it must "act[] in specific ways: through a joint resolution of both houses of Congress; through a resolution by one house; or through the actions of committees established by the rules of each house and imbued by those rules with authority to act on behalf of the house." *Id.*  Putting aside the pointless and significant burden this would place on Congress, as well as the wholly improper intrusion on the discretion of Congress and its Committees and Members to determine for themselves how to conduct business, it is directly contradicted by D.C. Circuit precedent.

In *Goland*, the D.C. Circuit explained that "[s]ince it is Congress' intent to maintain secrecy, and not Congress' conformance with the procedural niceties of classification, that makes [a record] a 'Congressional document,'" details such as "the identity of the classifier, the date on which the document was classified, etc., are irrelevant" in determining whether a document is a congressional record.  607 F.2d at 347 n.45.  The court therefore rejected the plaintiffs' argument that the status of the hearing transcript at issue could be affected by the identity of the individual

---

[7]  In any event, the Committee had not set up an email program affixing the legend to all of its emails with Defendants.  Second Decl. of Allison E. Halataei (Nov. 3, 2017) ¶ 3.  Rather, if a staff member wanted to include a legend on an email, he or she had to specifically copy and paste the legend into that email.  *Id.*  Committee staff members are authorized to include the legend on emails when they deem it appropriate.  *Id.*

who stamped the transcript "Secret." *Id.* Consistent with *Goland*, the court in *United We Stand* held that a legend appended to a letter by a JCT staff member sufficiently manifested JCT's intent to control the letter and any portions of the IRS response that would reveal the contents of the letter. *United We Stand*, 359 F.3d at 597; *see also id.* at 601 (focusing on "[t]he chief of staff's understanding"). Contrary to American Oversight's argument, therefore, it simply does not matter that the legend was affixed by "individual congressional staffers," rather than pursuant to a vote of the House or of the Committee, and no case holds or suggests to the contrary. Pl.'s Mem. at 37.[8]

### 3. *Congress's Manifestation Of Control Does Not Depend On An Agency's Conduct Or Consent*

American Oversight next contends that the Committee's manifestation of its intent to control somehow turns on *Defendants'* conduct or consent. Specifically, American Oversight claims that Defendants have chosen not to possess the Legended Documents for a "limited purpose" (contrary to the direction in the Committee's legend that the documents "are entrusted to your agency only for use in handling this matter," SOF ¶ 4), Pl.'s Mem. at 38-40, and that Defendants have not consented to Congress's assertion of control, *id.* 42-43.

Neither argument squares with D.C. Circuit precedent, which focuses solely on *Congress's* intent to control the documents. *United We Stand*, 359 F.3d at 600 (focus is on "'Congress's intent to control (and not on the agency's)'" (quoting *Paisley*, 712 F.2d at 694 n.30)); *Nat'l Archives*,

---

[8] The *Goland* court also rejected the plaintiffs' argument that no House Rule specifically governed the "secrecy of testimony taken in executive session," explaining that the Committee did not need "the benefit of a general Rule" in order to assert control over the transcript. 607 F.3d at 347 n.45. This holding resolves American Oversight's complaint that "no rule" specifically conferred on Committee staff members the "authority to assert control over [the] records." Pl.'s Mem. at 37. In any event, the rules of the Committee provide that "[t]he staff of the Committee shall be under the general supervision and direction of the Chairman of the full Committee," Rules of the Committee on Ways & Means (115th Cong.), Rule 22, and thus their use of the legend does reflect the Committee's manifestation of intent to retain control over the Legended Documents under any view.

753 F.3d at 215 ("In this line of cases, we have analyzed *only* the transferring entity's intent to control the documents and their future use.") (emphasis added); *ACLU I*, 105 F. Supp. 3d at 45 ("The Court's inquiry, therefore, is a streamlined one: do there exist 'sufficient indicia of congressional intent to control.'").   Indeed, *Goland* clearly states that "indicia of Congress' continuing control … are *dispositive* of a document's 'congressional' status."   607 F.2d at 348 n.48 (emphasis added).

The D.C. Circuit has explained that this exclusive "focus on congressional control" in fact "reflects the considerations that underlie the second factor [of the *Burka* four-part test]: the agency's ability to use or dispose of the record as it sees fit."   *United We Stand*, 359 F.3d at 600. This is so because the traditional "focus on the control exercised by the possessor agency is not incompatible with *Goland*'s focus on Congress' intent to control."   *Paisley*, 712 F.2d at 693. "Certainly, the two approaches differ somewhat in that one emphasizes factors relating to the absence of control by the possessor, while the other stresses the manifestations by the creator of an intent to control."   *Id.*  However, "[i]f, under the *Goland* standard, Congress has manifested its own intent to retain control, *then the agency  – by definition  – cannot lawfully 'control' the documents … and hence they are not 'agency records.'*"   *Id.*   (emphasis added) (footnotes omitted); *ACLU II*, 823 F.3d at 664 (same); *Judicial Watch*, 726 F.3d at 222 (same); *United We Stand*, 359 F.3d at 600 (same); *ACLU I*, 105 F. Supp. 3d at 45 (same).

Indeed, as the court in *United We Stand* reiterated: "[W]e have not, as the dissent implies, changed the focus from agency control to congressional intent.  *Paisley* accomplished that task: '[i]f, under the *Goland* standard, Congress has manifested its own intent to retain control, then the agency – by definition – cannot lawfully 'control' the documents.'"   359 F.3d at 603 (quoting *Paisley*, 712 F.2d at 693)).   American Oversight's misguided suggestion that the Executive

Branch's conduct or consent could affect the status of documents as congressional records is completely contrary to binding precedent, and moreover would vitiate "Congress' clear prerogative to prevent disclosure of its own confidential materials[.]"  *Goland*, 607 F.2d at 348 n.48; *see* pp. 14-15, *infra*.  Consequently, the only question here is whether the Congress has manifested an intent to control the Legended Documents, and "neither the [Defendants'] own expectations nor [their] handling" of the Legended Documents affects their status as congressional records.  *United We Stand*, 359 F.3d at 603.[9]

### 4.   *Congressional Records Need Not Relate To Oversight*

Finally, American Oversight claims that congressional records must be related to "oversight," "because the special policy considerations that underlie the D.C. Circuit's interpretation of the FOIA statute … apply most directly to the oversight context[.]"  Pl.'s Mem. at 40, 40-42.  As an initial matter, American Oversight's argument is premised on the mistaken assumption that congressional "oversight" activities are somehow distinct from other legislative activities for purposes of FOIA.  Congress's "oversight" activities are instead part and parcel of its legislative authority, because "[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change."  *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927).

---

[9]   American Oversight's contention that Defendants have not properly segregated the Legended Documents or used them for a "limited purpose," Pl.'s Mem. at 35, 38-40, suffers from an additional flaw.  In *ACLU II*, the D.C. Circuit specifically rejected the argument that "[a]ppellees cannot establish a clear assertion of congressional control with respect to the Full Report because it was disseminated to Appellees without any restrictions" on its use, and indeed the SSCI told the CIA that it should use the report "as broadly as appropriate."  832 F.3d at 659, 667.  *ACLU II* similarly emphasized that "[i]t does not matter that the Full Report was neither stored on the CIA's segregated network drive nor kept in the CIA's Reading Room."  *Id.* at 665.

Indeed, there is no discernible line between "oversight" activities and congressional fact-gathering conducted for purposes of considering possible future legislation or enhancing Congress's understanding of the operation and effect of existing or potential legislation.  Pursuant to House Rules, each committee's "general oversight responsibilities" include "review and study on a continuing basis" of matters within their jurisdiction "in order to assist the House" in "its analysis, appraisal, and evaluation of … conditions and circumstances that may indicate the necessity or desirability of enacting new or additional legislation" and "its formulation, consideration, and enactment of changes in Federal laws, and of such additional legislation as may be necessary or appropriate."  Rules of the U.S. House of Representatives (115th Cong.), Rule X.2(a), (a)(1)-(2), (a)(2), (b)(1).  American Oversight's FOIA requests, which seek communications between Congress and Defendants "relating to health care reform," Compl. ¶¶ 11, 12, fall squarely within the congressional "oversight" function.

In any event, the D.C. Circuit's congressional-records test is in no manner limited to some narrower conception of "oversight" documents.  To be sure, the D.C. Circuit has rightly refused "to confront Congress with th[e] dilemma" of being "forced either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role."  *Goland*, 607 F.2d at 346.  But that hardly supports American Oversight's suggestion that Congress should be confronted with the "dilemma" of being "forced either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its" need to communicate with the Executive Branch in aspects of its legislative activities that some might view as distinct from "oversight," such as in seeking technical assistance regarding potential legislation or engaging in sensitive legislative negotiations.  *Id.*  Indeed, because Congress's "oversight" authority is derived from its fundamental legislative power, *see McGrain*, 273 U.S. at 175, the proposition that "oversight"

documents (narrowly defined) should receive *more* protection than other legislative documents is nonsensical.

Contrary to American Oversight's suggestion, the D.C. Circuit has not limited its discussion of the "special policy considerations," Pl.'s Mem. at 40, that underlie the congressional-records test to the "oversight" context. Rather, the court has noted other considerations that more generally "counsel in favor of according due deference to Congress' affirmatively expressed intent to control its own documents." *Paisley*, 712 F.2d at 693 n.30; *ACLU II*, 823 F.3d at 662 (same). For example, the Court in *Goland* explained that "Congress has undoubted authority to keep its records secret, authority rooted in the Constitution, longstanding practice, and current congressional rules." 607 F.2d at 346 (footnotes omitted); *see also United We Stand*, 359 F.3d at 599 (emphasizing "Congress's right to keep its own materials confidential"). And the D.C. Circuit has stated that courts must "accord due weight to the factors that influence us in this case, including (1) Congress' clear intent to exempt congressional documents from disclosure under FOIA; (2) Congress' clear prerogative to prevent disclosure of its own confidential materials; and (3) the danger of inhibiting the legislative and judicial branches from making their records available to the executive branch." *Goland*, 607 F.2d at 348 n.48. In short, there is "no reason" that Congress should be forced to "waive[] its own prerogatives of confidentiality" when it communicates with the Executive Branch regarding official matters – regardless of the nature of the communications. *Id.*[10]

---

[10]  Indeed, it appears that the hearing transcript at issue in *Goland* may have related to Congress' consideration of potential legislation, rather than "oversight," as American Oversight defines the term. The FOIA request in that case sought information on the legislative history of the National Security Agency Act of 1947 and the Central Intelligence Agency Act of 1949, and the CIA described the hearing transcript as a "document relating to the legislative history of the CIA's organic statutes[.]" *Goland*, 607 F.2d at 343.

**C. American Oversight Is Not Entitled To Discovery Before Summary Judgment Is Entered In Favor Of The Committee.**

American Oversight is not entitled to discovery before the entry of summary judgment. American Oversight contends that it is entitled to discovery on issues relating to "the process and procedures for affixing the [legend] to the [Legended Documents]" and "how the [Legended Documents] and other records bearing the [legend] were maintained in agency files" and "used by the defendant agencies."  Pl.'s Mem. at 44, 45; Pl.'s Statement of Material Facts (ECF No. 30-5) ("Pl.'s SOF") at 6-7 (listing issues).  But, as explained above, those issues are entirely irrelevant to the determination whether the Legended Documents are congressional records.  As the Court in *Goland* explained: "Since it is Congress' intent to maintain secrecy, and not Congress' conformance with the procedural niceties of classification, that makes [a document] a 'Congressional document,' plaintiffs' arguments that discovery is required as to the identity of the classifier, the date on which the document was classified, etc., are irrelevant in reaching a decision."  607 F.2d at 347 n.45.  And because the only relevant, material facts are undisputed, Pl.'s SOF ¶¶ 1-10 (admitting each of the undisputed material facts in the Committee's statement of facts), the Committee is therefore plainly entitled to summary judgment.[11]

**CONCLUSION**

For the reasons set forth above, the Legended Documents (OMB-American Oversight-000988 to 001030; HHS-Sept 2017-01621 to 01623; HHS-Sept 2017-01624 to 01627; HHS-Sept 2017-01628 to 01635) are congressional records and therefore not subject to FOIA.  Accordingly,

---

[11] The Committee also agrees with Defendants that the Legended Documents – as with all the documents at issue – are protected from disclosure pursuant to the common-interest doctrine.  *See* Defs.' Mot. for Summ. J. (ECF No. 25-1) at 20-22.  Because Defendants have thoroughly briefed that issue, and in light of the Committee's status as an intervenor, the Committee will not repeat Defendants' arguments on that issue here.

the Court should grant summary judgment in favor of the Committee with respect to its affirmative

defense and deny American Oversight's cross-motion for summary judgment.

Respectfully Submitted,

*/s/ Thomas G. Hungar*
Thomas G. Hungar,
   *General Counsel* (DC Bar #447783)
Eleni M. Roumel,
   *Assistant General Counsel* (NY Bar #3978863)
Kristin A. Shapiro,
   *Assistant General Counsel* (DC Bar #1007010)


OFFICE OF GENERAL COUNSEL[*]
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Thomas.Hungar@mail.house.gov

*Counsel for the U.S. House of Representatives*
 *Committee on Ways & Means*


November 3, 2017

---

[*] Attorneys in the U.S. House of Representatives Office of General Counsel are "entitled, for the purpose of performing the counsel's functions, to enter an appearance in any proceeding before any court of the United States or of any State or political subdivision thereof without compliance with any requirements for admission to practice before such court."  2 U.S.C. § 5571(a).

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2017, I caused the foregoing to be filed via the U.S.

District Court for the District of Columbia's CM/ECF system, which I understand caused a copy

to be served on registered CM/ECF users:


*/s/ Thomas G. Hungar*
Thomas G. Hungar