**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN OVERSIGHT, INC.,

                Plaintiff,

v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, et al.,

                Defendants.

Civ. Action No. 17-827(EGS/DAR)

**MEMORANDUM OPINION**

Plaintiff American Oversight ("American Oversight" or "Plaintiff") has sued Defendants Department of Health and Human Services ("HHS") and Office of Management and Budget ("OMB") (collectively "Defendants") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 arising out of Defendants' withholding of certain documents pursuant to FOIA Exemption 5. *See* Complaint, ECF No. 1.[1] Subsequent to the filing of the Complaint, the U.S. House of Representatives Committee on Ways and Means ("CWM" or the "Committee") intervened as a defendant. *See* Minute Order (Sept. 26, 2017). On March 8, 2018, the Court referred the case to a Magistrate Judge for a Report and Recommendation ("R. & R.") on the pending Cross-Motions for Summary Judgment, and the case was randomly referred to Magistrate Judge Deborah A.

---

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

Robinson. *See generally*, Docket for Civ. Act. No. 17-287.
Thereafter, on July 24, 2018, the Court referred the Plaintiff's
Motion for Judgment on the Pleadings to Magistrate Judge
Robinson. *See generally id.*

Pending before the Court are Defendants' Motion for Summary
Judgment, *see* Mot. for Summ. J., ECF No. 25; the Committee on
Ways and Means' ("CWM" or "the Committee") Motion for Summary
Judgment, *see* Mot. for Summ. J. of the Comm. on Ways and Means
of the U.S. H.R. ("CWM'S MSJ"), ECF No. 27; and Plaintiff's
Cross-Motion for Summary Judgment, *see* Cross-Mot. for Summ. J.
("Pl.'s XMSJ"), ECF No. 30. Also pending before this Court is
Plaintiff's Motion for Judgment on the Pleadings, *see* Mot. for
J. on the Pleadings ("Pl.'s MJP"), ECF No. 45.

Magistrate Judge Robinson issued a R. & R. recommending
that this Court deny Plaintiff's Motion for Judgment on the
Pleadings. *See* R. & R., ECF No. 48 at 1. Magistrate Judge
Robinson issued a second R. & R. recommending that this Court
grant in part and deny in part Defendants' Motion for Summary
Judgment, grant CWM's Motion for Summary Judgment, and deny
Plaintiff's Cross-Motion for Summary Judgment, as well as
Plaintiff's requests for *in camera* review and discovery. *See* R.
& R., ECF No. 49 at 26.

Plaintiff raises several objections to Magistrate Judge
Robinson's R. & R.'s. *See generally* Plaintiff's Objections to

the Magistrate Judge's Proposed Findings and Recommendations ("Pl.'s J. on the Pleadings Objections"), ECF No. 50; Plaintiff's Objections to the Magistrate Judge's Proposed Findings and Recommendations ("Pl.'s MSJ Objections"), ECF No. 51. In addition, Defendants also raise objections to the R. & R. *See* Defs.' Limited Objections to Magistrate Judge's Proposed Findings and Recommendations ("Defs.' MSJ Objections"), ECF No. 52.

Upon careful consideration of the R. & R.'s, the objections of both parties and opposition thereto, the applicable law, and the entire record herein, the Court hereby **ADOPTS** the R. & R. as to the Motion for Judgment on the Pleadings, *see* ECF No. 48; **ADOPTS IN PART AND REJECTS IN PART** Magistrate Judge Robinson's R. & R. as to the Motion for Summary Judgment, *see* ECF No. 49; **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment, *see* ECF No. 25; **GRANTS IN PART, DENIES IN PART AND HOLDS IN ABEYANCE IN PART** Plaintiff's Motion for Summary Judgment, *see* ECF No. 30; and **DENIES** Plaintiff's requests for *in camera* review and discovery, *see id*. In addition, in view of the Court's grant of summary judgment to Defendants, the Court **FINDS AS MOOT** CWM's Motion for Summary Judgment, *see* ECF No. 27.

I.    **Background**[2]

American Oversight is an organization that seeks to promote transparency in government by submitting FOIA requests and publishing the information gained from such requests to educate the public about government activities. *See* Compl., ECF No. 1 ¶ 6. This lawsuit was initiated in response to issues arising out of American Oversight's FOIA request for information regarding health care reform legislation. *See generally id.*

HHS is a federal agency responsible for the regulation and implementation of legislation concerning, among other things, healthcare. *See* R. & R., ECF No. 49 at 2. In particular, HHS played a significant role in the development of implementation strategies for the health care reform bill that served as the focus of Plaintiff's FOIA request: the American Health Care Act ("AHCA"). *See* Decl. of Kristin S. Skrzycki ("Skrzycki Decl."), ECF No. 25-5 ¶¶ 11-14, 16-18. HHS's role also included reaching out to congressional staff to both provide technical assistance and to receive information on congressional happenings to evaluate potential regulations and operational changes. *Id.* ¶¶ 9, 14.

The Office of Management and Budget ("OMB") is an executive agency tasked with advising the President on proposed

---

[2] The Background section closely tracks Magistrate Judge Robinson's R. & R.s. *See* ECF Nos. 48-49, Background.

legislation and other matters being considered in Congress. *See*
Decl. of Jonathan Slemrod ("Slemrod Decl."), ECF No. 25-3 ¶ 8.
This advisory process lasts throughout congressional discussion
of the bill and culminates with a final recommendation typically
submitted to the President after the bill is passed by Congress.
*Id.* ¶ 9. OMB is also tasked with the preparation of Statements
of Administration Policy ("SAPs") to be issued before a vote is
held, the drafting of which involves a process of gathering
input from all parties interested in a given piece of
legislation. *Id.* ¶¶ 8, 12. That list of parties often includes
members of Congress and congressional staff who are
knowledgeable on the subject matter for guidance in crafting a
more informed statement. *Id.* ¶ 12. Finally, OMB has a role in
coordinating expert opinions to develop executive positions and
policies, as well as in aiding Congress in drafting legislation.
*Id.* ¶¶ 14, 17.

In March of 2017, Plaintiff FOIA requests to HHS and OMB
seeking disclosure of the following:

> (1) All communications, meeting notices,
> meeting agendas, informational material,
> draft legislation, talking points, or other
> materials exchanged between HHS and any
> members of Congress or congressional staff
> relating to health care reform.
>
> (2) All calendar entries for the Secretary,
> any political or SES appointees in the
> Secretary's office, and the Acting Assistant
> Secretary for Legislation, or anyone

> > maintaining calendars on behalf of these
> > individuals, relating to health care reform.

Compl., ECF No. 1 ¶ 11 (the request sent to OMB was substantially the same as the request sent to HHS, quoted here).

This litigation was initiated on May 4, 2017, primarily over a dispute regarding expedited processing for American Oversight's FOIA request, although Plaintiff's complaint also alleged that Defendants failed to conduct adequate searches, and wrongfully withheld nonexempt records. *Id.* at 10-12. American Oversight argued that it was entitled to an expedited process because of its status as "a person primarily engaged in disseminating information," while the agencies argued they could not comply with the request on such a short schedule because of the high volume of potentially responsive documents identified by their searches. *Id.* at 4; *see* Mot. Hearing Proceedings Tr., ECF No. 13 at 4. The Court set a final production due date for September 5, 2017 for the submission of all responsive documents, with one third of the documents to be submitted each month on a rolling basis. *See* Minute Order (May 25, 2017).

The documents submitted by the agencies on July 31, 2017 (as part of the second round of production) contained several records with redacted information, including calendar entries and emails exchanged with Congress, which the agencies argued were exempt from disclosure under the Exemption 5 deliberative process privilege. *See* Mem. P. & A. Supp. Defs.' Mot. Summ. J.

("Defs.' MSJ"), ECF No. 25-1 at 18. Plaintiff filed a Status
Report and Request for Hearing regarding the redacted documents,
which included primarily emails between congressional staff and
staff from OMB and HHS. *See* ECF No. 15 at 1–2. The Court denied
the motion for a hearing, however, after concluding that a
hearing on the redacted documents was premature. *See* Minute
Order (Aug. 4, 2017). Plaintiff's claim that the emails were
improperly redacted is now at issue in the pending motion for
summary judgment.

On September 15, 2017, CWM filed a motion to intervene as a
Defendant on the ground that the original Defendants disclosed
certain redacted documents involving protected congressional
records of the Committee. *See* Mot. to Intervene, ECF No. 19 at
1–2. The documents in question contain communications between
staff members of the Committee and staff members in HHS and OMB,
discussing health care reform. *See* Decl. of Allison E. Halatei
("Halatei Decl."), ECF No. 27-2 ¶ 8.

The Committee alleged that HHS and OMB, in their final
round of document production, submitted documents containing
"unredacted portions of four of the Committee's confidential
congressional records, which are not subject to FOIA and should
not have been disclosed even in part." Mot. to Intervene, ECF
No. 19 at 7. The four documents in question are email chains,
composed of twenty-five emails in total. *See* Reply in Supp. of

Pl.'s Cross-Mot. for Summ. J. ("Pl.'s XMSJ Reply"), ECF No. 37
at 26 n.13. The Committee further alleged that the
communications in question were marked with a legend from the
Committee, expressing the Committee's clear intent to control
the correspondence and responses thereto as congressional
records. CWM'S MSJ, ECF No. 27 at 14. The legend states the
following:

> This document and any related documents,
> notes, draft and final legislation,
> recommendations, reports, or other materials
> generated by the Members or staff of the
> Committee on Ways and Means are records of the
> Committee, remain subject to the Committee's
> control, and are entrusted to your agency only
> for use in handling this matter. Any such
> documents created or compiled by an agency in
> connection with any response to this Committee
> document or any related Committee
> communications, including but not limited to
> any replies to the Committee, are also records
> of the Committee and remain subject to the
> Committee's control. Accordingly, the
> aforementioned documents are not 'agency
> records' for purposes of the Freedom of
> Information Act or other law.

Exhibit A, ECF No. 27-2 at 5. Of the twenty-five emails
comprising the four email chains, only six included the legend
(though it was included at least once in each chain). Pl.'s XMSJ
Reply, ECF No. 37 at 26 n.13; *see* Decl. & Exs., ECF No. 27-2 at
5, 49-50, 53, 55, 59. The Committee maintains that all documents
containing the legend, as well as those relating to the legend,
are not "agency records" within the meaning of FOIA and

therefore are not subject to disclosure. CWM'S MSJ, ECF No. 27 at 13-14.

American Oversight filed a response to the Motion to Intervene on September 26, 2017, stating that it would not oppose the motion at that time. *See* Pl.'s Resp. to Mot. for Leave to Intervene, ECF No. 24 at 1-2. American Oversight did, however, note that it did not intend to waive any arguments that might be made in response to the Committee's motion for summary judgment, which American Oversight would address in its own summary judgment brief. *Id.* at 2. In light of American Oversight's response, the Court granted as unopposed the Committee's Motion to Intervene. Minute Order (Sept. 26, 2017).

Also on September 26, 2017, Defendants HHS and OMB moved for summary judgment, as did CWM in a separate motion. *See* Defs.' MSJ, ECF No. 25-1; CWM'S MSJ, ECF No. 27. Plaintiff cross-moved and opposed both motions on October 17, 2017. *See* Pl.'s XMSJ, ECF No. 30. CWM and Defendants replied on November 3, 2017. *See* Reply Mem. in Supp. of Mot. for Summ. J. of CWM of the U.S. H.R. and in Opp'n to American Oversight's Cross-Mot. for Summ. J. ("CWM MSJ Reply"), ECF No. 33; Mem. of P. & A. in Opp'n to Pl.'s Mot. for Summ. J. and in Reply in Supp. of Defs.' Mot. for Summ. J. ("Defs.' MSJ Reply"), ECF No. 34. Plaintiff filed its own reply on November 10, 2017. *See* Pl.'s XMSJ Reply, ECF No. 37. On March 8, 2018, pursuant to Local Rule 72.2, Judge

Sullivan referred the case to a Magistrate Judge for a R. & R. on the pending Cross-Motions for Summary Judgment, and the case was randomly referred to Magistrate Judge Deborah A. Robinson. *See generally*, Docket for Civ. Act. No. 17-287.

Thereafter, on July 23, 2018, Plaintiff further moved for Judgment on the Pleadings with respect to CWM. *See* Pl.'s MJP, ECF No. 45. CWM opposed, *see* Opp'n of CWM to Pl.'s Mot. for J. on the Pleadings ("CWM MJP Opp'n"), ECF No. 46; and Plaintiff replied, *see* Reply in Supp. of Pl.'s Mot. for J. on the Pleadings as to Defendant-Intervenor ("Pl.'s MJP Reply"), ECF No. 47. On July 24, 2018, the Court referred the Plaintiff's Motion for Judgment on the Pleadings to Magistrate Judge Robinson. *See generally id.*

Magistrate Judge Robinson issued a R. & R. recommending that this Court deny Plaintiff's Motion for Judgment on the Pleadings. *See* R. & R. ("MJP R. & R."), ECF No. 48 at 1. Magistrate Judge Robinson issued a second R. & R. recommending that the Court grant in part and deny in part Defendants' Motion for Summary Judgment, grant CWM's Motion for Summary Judgment, and deny Plaintiff's Cross-Motion for Summary Judgment, along with Plaintiff's requests for *in camera* review and discovery. *See* R. & R. ("MSJ R. & R."), ECF No. 49 at 26.

Plaintiff raised several objections to Magistrate Judge Robinson's R. & R.'s. *See generally* Pl.'s MJP Objs., ECF No. 50;

Pl.'s MSJ Objections, ECF No. 51. Defendants also raised objections to the R & R. *See* Defs.' MSJ Objections, ECF No. 52. CWM responded to both sets of Plaintiff's objections. *See* Resp. of CWM to Pl.'s Objs. to the Magistrate Judge's Proposed Findings and Recommendations ("CWM Opp'n MJP Objs."), ECF No. 53; Resp. of CWM to Pl.'s Objs. to the Magistrate Judge's Proposed Findings and Recommendations ("CWM Opp'n MSJ Objs."), ECF No. 56. Plaintiff also responded to Defendants' objections. *See* Pl.'s Opp'n to Defs.' Ltd. Objs. to the Magistrate Judge's Proposed Findings and Recommendations ("Pl.'s Opp'n. MSJ Objections"), ECF No. 54.

Plaintiff then filed a reply to CWM's response to Plaintiff's objections to the R. & R. addressing Plaintiff's Motion for Judgment on the Pleadings. *See* Reply in Supp. of Objs. to the Magistrate Judge's Proposed Findings and Recommendations ("Pl.'s Reply MJP Objs."), ECF No. 55. Defendants filed their own reply to Plaintiff's opposition to their objections, and simultaneously responded to Plaintiff's objections, *see* Defs.' Resp. to Pl.'s Objs. to the Magistrate Judge's Proposed Findings and Recommendations and Reply in Further Supp. of Defs.' Ltd. Objs. ("Defs.' Reply MSJ Objs."), ECF No. 57. Finally, Plaintiff submitted a reply. *See* Reply in Supp. of Pl.'s Objs. to the Magistrate Judge's Proposed Findings and Recommendations ("Pl.'s Reply MSJ Objs."), ECF No. 59.

A series of Notices of Supplemental Authority ("NSAs") followed. First, on September 17, 2018, Plaintiff filed a NSA relevant to its challenge, in its Motion for Summary Judgment, to OMB's use of Exemption 5 to redact calendar entries. *See* NSA, ECF No. 60. Defendants responded differentiating the authority. *See* Defs.' Resp. to Pl.'s NSA, ECF No. 61. A few months later, on March 31, 2019, Plaintiff filed a NSA also addressing the issue of the application of Exemption 5. *See* Pl.'s NSA, ECF No. 67. Defendants then filed a NSA as to Exemption 5 on July 27, 2020, *see* NSA, ECF No. 74; which Plaintiff attempted to distinguish, *see* Resp. to NSA, ECF No. 75. Defendants submitted a second NSA related to Exemption 5 on January 18, 2022, *see* NSA, ECF No. 78, to which Plaintiff responded, *see* Resp. to NSA, ECF No. 79. The motions are fully briefed and ready for adjudication.

## II.  **Legal Standard**

### A.  **Objections to a Magistrate Judge's Report and Recommendation**

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has entered a recommended disposition. Fed. R. Civ. P. 72(b)(1)-(2). A district court "may accept, reject or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."). A district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R. & R.] only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (citation omitted). "Under the clearly erroneous standard, the magistrate judge's decision is entitled to great deference" and "is clearly erroneous only if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed." *Buie v. D.C.*, No. CV 16-1920 (CKK), 2019 WL 4345712, at *3 (D.D.C. Sept. 12, 2019) (citing *Graham v. Mukasey*, 608 F. Supp. 2d 50, 52 (D.D.C. 2009)) (internal quotation marks omitted).

Objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for objection." LCvR 72.3(b). "[O]bjections which merely rehash an argument presented to and considered by the magistrate judge are not 'properly objected to' and are therefore not entitled to de novo review." *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting *Morgan v. Astrue*, No. 08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)).

**B.   Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment motions must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c)(1). This burden "may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

In evaluating a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Summary judgment turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]f the evidence is such

14

that a reasonable jury could return a verdict for the nonmoving party"—and thus a "genuine" dispute over a material fact exists—then summary judgment is not available. *Id.* at 248.

For purposes of summary judgment, materiality is determined by the substantive law of the action. *Id.* Accordingly, the substantive law identifies "which facts are critical and which facts are irrelevant," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Similarly, the applicable substantive evidentiary standards of the action guide "whether a given factual dispute requires submission to a jury." *Id.* at 255. The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### C.  FOIA

FOIA is based on the recognition that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). It was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," and it favors "full agency disclosure." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quoting

15

*Rose v. Dep't of the Air Force*, 495 F.2d 261, 263 (2d Cir. 1974)). FOIA cases are usually resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). The agency has the burden of justifying its response to the FOIA request it received, and the court reviews its response *de novo*. 5 U.S.C. § 552(a)(4)(B).

### D.   Adequate Search

To prevail on summary judgment in a FOIA case, the agency must show that it conducted an adequate search for records responsive to the plaintiff's FOIA request. *See Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). To make a prima facie showing of adequacy, the agency must demonstrate that it made a good-faith effort to search for responsive records "using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (adequacy depends on the "appropriateness of the methods used" rather than the "fruits of the search").

It may do so by submitting "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."

16

*Reporters Comm.*, 877 F.3d at 402 (quoting *Oglesby*, 920 F.2d at 68). Such affidavits "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). However, "[a]t a bare minimum, the agency's affidavits need to specify 'what records were searched, by whom, and through what process.'" *Rodriguez v. DOD*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994)).

"The agency fails to meet this burden such that summary judgment is inappropriate when the agency fails to set forth the search terms and the type of search performed with specificity or otherwise provides 'no information about the search strategies of the [agency] components charged with responding to [a] FOIA request' and 'no indication of what each [component's] search specifically yielded.'" *Otero v. DOJ*, 292 F. Supp. 3d 245, 251 (D.D.C. 2018) (quoting *Reporters Comm.*, 877 F.3d at 402).

**E.   Discovery**

"It is well established that discovery is rare in FOIA cases." *Cole*, 285 F. Supp. 3d at 76; *see Thomas v. FDA*, 587 F. Supp. 2d 114, 115 n.2 (D.D.C. 2008) (noting that "discovery is

17

an extraordinary procedure in a FOIA action"). "Where an agency's declarations are insufficient to support a finding that its search was adequate, courts 'generally will request that an agency supplement its supporting declarations rather than order discovery.'" *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 183 (D.D.C. 2013) (quoting *Wolf v. CIA*, 569 F. Supp. 2d 1, 10 (D.D.C. 2008)). "However, discovery may be granted when [a] plaintiff has made a sufficient showing that the agency acted in bad faith, has raised a sufficient question as to the agency's good faith, or when a factual dispute exists and the plaintiff has called the affidavits submitted by the government into question." *Citizens for Responsibility and Ethics in Wash. v. DOJ*, No. Civ. 05- 2078 (EGS), 2006 WL 1518964, at *3 (D.D.C. June 1, 2006) [Plaintiff hereinafter "CREW"] (internal citations omitted).

### F.   Judgment on the Pleadings

A motion for judgment on the pleadings may be made at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "Pleadings include any 'copy of a written instrument that is an exhibit to a pleading,' Fed. R. Civ. P. 10(c), such as relevant and authentic documents attached to the complaint. *Dist. No. 1, Pac. Coast Dist., Marine Engineers Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019) (citation omitted). A motion

pursuant to Rule 12(c) is appropriately granted when, at the close of the pleadings, "no material issue of fact remains to be resolved, and [the movant] is clearly entitled to judgment as a matter of law." *Montanans for Multiple Use v. Barbouletos,* 542 F.Supp.2d 9, 13 (D.D.C. 2008) (citations omitted), *aff'd* 568 F.3d 225 (D.C. Cir. 2009). When evaluating a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), courts employ the same standard that governs a Rule 12(b)(6) motion to dismiss. *Jung v. Ass'n of Am. Med. Colls.,* 339 F. Supp. 2d 26, 35-36 (D.D.C. 2004). A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *Twombly,* 550 U.S. at 555, but it need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1948 (2009). Accordingly, a court must accept the plaintiff's well-pleaded factual allegations to the extent that "they plausibly give rise to an entitlement to relief," *id.* at 1950, and "may thus only grant judgment on the pleadings if it appears, even accepting as true all inferences from the complaint's factual allegations, that the plaintiff cannot prove any set of facts entitling him to relief." *Lans v. Adduci Mastriani & Schaumberg L.L.P.,* 786 F. Supp. 2d 240, 265 (D.D.C. 2011). Because Rule 12(c) provides judicial resolution at an early stage of a case, the party seeking judgment on

the pleadings shoulders a heavy burden of justification. *Liberty Mar. Corp.*, 933 F.3d at 760.

### III. Analysis

#### A.   Motion for Judgment on the Pleadings

American Oversight argues that it should be granted judgment on the pleadings as to CWM's request that the Court enjoin Plaintiff from receiving certain records because it has "intervened in this action but failed to identify a cause of action entitling it to do so or to state any claim upon which relief can be granted." Pl.'s MJP, ECF No. 45 at 6. Plaintiff adds that because CWM seeks relief that does not exist under FOIA, "its purported Affirmative Defense [asking the Court to enjoin Plaintiff from receiving the Contested Records pursuant to FOIA] must be dismissed for lack of federal subject matter jurisdiction, or alternatively, for failure to state a claim." *Id.* at 7.

CWM responds that because it intervened as a defendant, rather than a plaintiff, it is not obligated to assert a cause of action in this matter. CWM's MJP Opp'n, ECF No. 46 at 10. It asserts that "it is well-established that where, as here, a third party has an interest in the documents sought by a FOIA requester, that party can intervene as a defendant to assert defenses against the requester's attempt to compel the production of the documents." *Id.* CWM further argues that it has

no need to file a "reverse FOIA" action against Defendants because it has not sought to enjoin Defendants from producing documents to Plaintiff, since the reason the congressional records are at issue is Plaintiff's FOIA case, and Defendants would not need to be enjoined if they are awarded summary judgment as to the documents at issue for CWM. *Id.* at 14-15. Plaintiff replies that CWM's actions are unlike those CWM cites because it did not "buttress a position taken by the party defendant in the case." Pl.'s MJP Reply, ECF No. 47 at 6. Instead, Plaintiff argues that CWM is asking the Court to "overturn an informal administrative determination that the defendant agencies have already made that the Contested Records are agency records." *Id.* at 6-7.

Magistrate Judge Robinson finds that CWM "was properly admitted to this action as Defendant-Intervenor, having satisfied all the requirements therefor," and is consequently "permitted to bring the same affirmative defense that either of the named defendants might have brought, including the 'congressional records' defense at issue here." MJP R. & R., ECF No. 48 at 6-7. Magistrate Judge Robinson also finds that because CWM properly entered this litigation as a Defendant-Intervenor, this Court "has subject-matter jurisdiction over this action and all claims made therein." *Id.* at 8. As a result, Magistrate

Judge Robinson recommends that this Court deny the Motion for Judgment on the Pleadings. *Id.* at 9.

Plaintiff objects to Magistrate Judge Robinson's R. & R., arguing that: (1) CWM cannot challenge an adverse agency determination as a defendant in a FOIA action; and (2) CWM's claim is inadequate and the Court lacks subject-matter jurisdiction because the positions of CWM and Defendants are not aligned. *See* Pl.'s MJP Objs., ECF No. 50 at 11. The Court discusses each of these in turn. The Court does not discuss the parts of Magistrate Robinson's R. & R. to which no objection is raised.

### 1. The Committee Is Properly Acting as a Defendant in a FOIA Action

Plaintiff argues that "the Committee's claim amounts to a direct challenge to the executive branch's treatment of the Contested Records" since "the defendant agencies have evinced their informal administrative determination that the Contested Records are agency records subject to FOIA" whereas CWM "claims that the Contested Records are, instead, congressional records not subject to FOIA." Pl.'s MJP Objs., ECF No. 50 at 7-8. Plaintiff argues that this alleged misalignment in positions makes this case different from the cases cited by CWM, in which the intervenor joined the action to *support* the agency's determinations regarding the records at issue, "not to challenge an adverse determination made by the agency." *Id.* at 9. CWM

responds that "Defendants have vigorously resisted disclosure of the redacted contents of the congressional communications at issue, asserting that those communications were intended to be confidential; the Committee's affirmative defense provides an additional ground for rejecting Plaintiff's attempts to compel disclosure of those documents, and therefore supplements the defenses being asserted by Defendants." CWM Opp'n MJP Objs., ECF No. 53 at 15. The Court agrees with CWM.

As a threshold matter, the Court reviews Magistrate Judge Robinson's R. & R. only for clear error. Pursuant to Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered a recommended disposition, a party may file specific written objections. The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to," and "may accept, reject or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3). Proper objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for objection." Local R. Civ. P. 72.3(b); *see also Means v. District of Columbia*, 999 F. Supp. 2d 128, 132 (D.D.C. 2013).

"If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R. & R.] only for clear error." *Houlahan*, 979

23

F. Supp. 2d at 88 (internal citation omitted). "Under the clearly erroneous standard, the magistrate judge's decision is entitled to great deference" and "is clearly erroneous only if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed." *Buie*, No. CV 16-1920 (CKK), 2019 WL 4345712, at *3.

Here, Plaintiff's objection as to the adversity of CWM and Defendants' positions is repeated from their filings on the Motion for Judgment on the Pleadings. *See* Pl.'s MJP Reply, ECF No. 47 at 8, 9, 14, 16. Further, Magistrate Judge Robinson specifically addressed this argument in her R. & R. *See* MJP R. & R., ECF No. 48 at 5 (stating that "[t]he fact that the agencies failed to raise the specific 'congressional records' defense and instead simply redacted the information from the documents pursuant to FOIA's Exemption 5 does not provide a significant enough discrepancy to label the two approaches 'directly adverse,' or even 'inapposite'") (citation omitted). The Court therefore only reviews the R. & R. for clear error and does not find any here.

First and foremost, the Court is unpersuaded that Defendants and CWM have adverse positions. As Magistrate Judge Robinson points out, "[b]oth Defendants and the Committee have sought, from the time this issue arose, to preserve the confidentiality of the contested documents." MJP R. & R., ECF

No. 48 at 5 (citations omitted). That CWM and Defendants present different defenses for why the records should not be disclosed does not mean their positions are adverse. CWM is not, as Plaintiff suggests, appealing the agencies' decision, but rather attempting to "prevent any *further* disclosure." MJP R. & R., ECF No. 48 at 5. For this reason, it is irrelevant if CWM "surely intends this potential finding to bind Defendants with respect to their treatment of the Contested Records in the future, including when responding to other future FOIA requests." Pl.'s MJP Objs., ECF No. 50 at 10.

Plaintiff describes the case law cited by CWM as a "laundry list of inapposite citations," and attempts to distinguish the authorities, Pl.'s Reply MJP Objs., ECF No. 55 at 6; but as CWM points out, Plaintiff "offers no explanation or argument as to why it would make any difference [for the purpose of this lawsuit] if the Committee's defense were adverse to Defendants' position." CWM Opp'n MJP Objs., ECF No. 53 at 16. Simply put, Plaintiff presents no case law as to why an adverse position, were it to exist, would impact the decision here.

Plaintiff does suggest that "were the Committee to prevail in arguing that the Contested Records are, in fact, 'congressional records,' Defendants would be severely limited in how they could use the Contested Records and related documents going forward." Pl.'s MJP Objs., ECF No. 50 at 9. However, as

CWM points out, Defendants' internal use of the documents is irrelevant to CWM's argument, and Plaintiff's own argument is unsupported by precedent. *See ACLU v. CIA*, 823 F.3d 655, 665, 667 (D.C. Cir. 2016) (upholding congressional-record status of document even though agency had "discretion to use the [document] for internal purposes" and to disseminate within the executive branch "as broadly as appropriate," and holding that "[i]t does not matter that the [document] was neither stored on the CIA's segregated network drive nor kept in the CIA's Reading Room"). For these reasons, the Court concludes that Magistrate Judge Robinson did not err in concluding that CWM is a proper defendant in this action.

### 2. The Court Has Subject Matter Jurisdiction Over this Action

Plaintiff next argues that CWM has failed to state a claim and that the Court lacks subject matter jurisdiction over the claim if CWM did succeed in stating one, on the same ground that the positions of CWM and Defendants are adverse. *See* Pl.'s MJP Objs., ECF No. 50 at 11. Plaintiff essentially repackages its earlier arguments on adversity, arguing that "the Committee's claim for relief, while purportedly directed [as an affirmative defense] at Plaintiff, is in reality a claim for relief against the defendant agencies," in the form of enjoining Plaintiff's access to the Contested Records. *Id.* at 13. Plaintiff concludes that "[b]ecause the relief the Committee seeks is only available

under the APA [as a reverse FOIA lawsuit], and not through FOIA, the Committee has failed to state a claim upon which relief can be granted." Pl.'s MJP Objs., ECF No. 50 at 14.[3]

CWM responds that "Plaintiff offers no authority for its counter-intuitive theory that the Committee was somehow precluded from asserting an affirmative defense against Plaintiff's efforts to compel disclosure and was instead obligated to file a separate action against Defendants to enjoin them from doing something that they have evidenced no inclination to do in the absence of legal compulsion under FOIA." CWM Opp'n MJP Objs., ECF No. 53 at 20. Plaintiff replies that CWM is refusing to acknowledge that it is in fact seeking an injunction, which is unsupported by FOIA. Pl.'s MJP Reply, ECF No. 55 at 3-4. The Court reviews Magistrate Judge Robinson's R. & R. only for clear error since American Oversight's arguments are repeated from their Motion filings. *See* Pl.'s MJP, ECF No. 45 at 11-14; *see also Houlahan*, 979 F. Supp. 2d at 88.

---

[3] American Oversight relatedly argues that "the Magistrate Judge's conclusion that the Court has subject matter jurisdiction over the Committee's 'Affirmative Defense' also rests on the mistaken conclusion that the Committee's position is aligned with the position of the defendant agencies such that intervening as a defendant in this FOIA action was proper." Pl.'s MJP Objs., ECF No. 50 at 14. The Court does not reach this argument, since it has already determined that the positions are not adverse.

The Court concludes that Magistrate Judge Robinson did not err in her recommendation.

As Magistrate Judge Robinson states, "FOIA does not provide an independent cause of action for a party to bar an executive agency's willing disclosure of documents, but it is another matter entirely to argue that defendants in a FOIA case may not mount any defense against a plaintiff's attempt to use the statute to compel disclosure, as Plaintiff argues here." MJP R. & R., ECF No. 48 at 6. Here, the relief CWM seeks supplements Defendants' defense, since the "goal of both defenses—Exemption 5 and congressional records—is to prevent the disclosure of the documents for the purpose of preserving their confidential nature." *Id.* at 5. Plaintiff points to no authority that defenses are required to be consistent with each other.

Nor is the Court persuaded by Plaintiff's misleading characterization that CWM is seeking an injunction against Defendants. As a practical matter, it is correct that if Plaintiff prevails in this suit against Defendants, CWM's intervention, if successful, would result in Defendants having to withhold documents. However, CWM's lawsuit is directed at preventing a release that is being compelled by Plaintiff, while Defendants have resisted disclosure and explained that they "had an expectation that [their] communications [with Congress] would be kept confidential." Slemrod Decl., ECF No. 25-3 ¶ 19;

Skrzycki Decl., ECF No. 25-5 ¶ 11 ("I expected that communications between HHS and Congress would be kept confidential."). Defendants and CWM are aligned in their goal of preventing further disclosure, and their defenses thus serve to supplement each other, as Magistrate Judge Robinson found. *See* MJP R. & R., ECF No. 48 at 5.

Finding no clear error in Magistrate Judge Robinson's R. & R., the Court hereby **ADOPTS** the R. & R., *see* ECF No. 48, and **DENIES** the Motion for Judgment on the Pleadings, *see* ECF No. 45.

### B.   Motion for Summary Judgment

Defendants OMB and HHS move for summary judgment, arguing that they properly withheld information from disclosure pursuant to FOIA Exemption 5. *See generally* Defs.' MSJ, ECF No. 25-1. Defendant-Intervenor CWM also moves for summary judgment with respect to its affirmative defense on the ground that four documents at issue in this case are congressional records and therefore not subject FOIA. *See* CWM'S MSJ, ECF No. 27 at 1. Plaintiff American Oversight cross-moves for summary judgment, arguing that Defendants improperly withheld information under Exemption 5, and that Defendant-Intervenor CWM incorrectly claims that four of the records produced by Defendants are not subject to FOIA. *See* Pl.'s XMSJ, ECF No. 30 at 1. Plaintiff also requests an *in camera* review of the documents so that the Court may ascertain whether the exemption is applicable, *id.* at 39;

and asks the Court to grant discovery in the event the Court denies its motions for summary judgment, *id.* at 53.

Magistrate Judge Robinson finds that: (1) the search conducted by HHS was reasonably designed to turn up the documents responsive to the request; (2) the legended documents sought to be retained by CWM should have been withheld as congressional documents and are not subject to disclosure under FOIA; (3) the redacted documents can be appropriately withheld under Exemption 5's consultant corollary, but only with regard to communications directly related to the agencies' solicitation for advice and the responses thereto *and* which are sufficiently described by affidavit as being related to an agency deliberation; (4) *in camera* review of the redacted documents is neither necessary nor appropriate under these circumstances; and (5) discovery is unnecessary to decide the case on summary judgment. MSJ R. & R., ECF No. 49 at 2.

Plaintiff American Oversight objects: that (1) HHS's search was not adequate; (2) the redacted documents were not properly withheld; (3) Defendants did not meet their burden of showing that some of the challenged records are protected under the deliberative process privilege; (4) Magistrate Judge Robinson did not address Plaintiff's arguments as to Defendants' redactions in calendar entries and attachments; (5) the contested records are not congressional records outside the

30

scope of FOIA; and (6) Plaintiff's request for *in camera* review should have been granted. Pl.'s MSJ Objs., ECF No. 51 at 3-4. Defendants, in turn, object to the "Report and Recommendation's suggestion that the agencies' affidavits and *Vaughn* indexes fail to sufficiently identify a specific agency deliberative process for some of the redacted communications." Defs.' MSJ Objs., ECF No. 52 at 6.  The Court discusses each of these objections in turn, along with the appropriate standard of review for the objections before. The Court does not discuss the parts of Magistrate Robinson's R. & R. to which no objection is raised.

### 1. HHS Conducted a Reasonably Adequate Search

An agency is entitled to summary judgment in a FOIA case with respect to the adequacy of its search if the agency shows "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (citations omitted), *superseded by statute on other grounds by* Electronic FOIA Amendments 1996, Pub. L. No. 104- 231, 110 Stat. 3048. "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation omitted). An agency can establish the reasonableness of its search by

"reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Here, Magistrate Judge Robinson finds that HHS conducted a reasonably adequate search, because it "conducted its searches using what it perceived to be a reasonable set of search terms (the most commonly used references) that would turn up the requested documents," and which covered the entire scope of the request. *See* MSJ R. & R., ECF No. 49 at 9. In response to this, Plaintiff first objects that Magistrate Judge Robinson failed to consider "Plaintiff's argument that it was unreasonable for HHS to select search terms based only on the terms most often used *within* HHS, when the communications sought by Plaintiff's FOIA request expressly involved entities *outside* HHS." Pl.'s MSJ Objs., ECF No. 51 at 9. Second, Plaintiff objects that "the Magistrate Judge failed to give adequate weight to HHS's concession that other terms may, in fact, have been used by agency personnel." *Id.* at 10. Third, Plaintiff objects that "the Magistrate Judge did not properly consider the available evidence showing that other

terms were, in fact, used by both agency personnel and members of Congress." *Id.* at 11.

Defendants respond that American Oversight's arguments do not "meaningfully engage with whether HHS appropriately exercised its discretion to determine what constitutes a *reasonable* search." Defs.' Opp'n MSJ Objs., ECF No. 57 at 28. The Court agrees, and reviews Magistrate Judge Robinson's R. & R. only for clear error since Plaintiff essentially argues that Magistrate Judge Robinson did not draw the right conclusions based on the arguments in Plaintiff's brief, which are acknowledged in the R. & R. *See* MSJ R. & R., ECF No. 49 at 8.

"When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc.*, 926 F.2d at 1201. Here, as Defendants point out, "[t]he question is not whether it would be reasonable to expect that a responsive record might contain the word 'Obamacare'; rather, the question is whether it would be reasonable to expect a responsive record to contain *none* of the three terms HHS used." *Id.*; *see also Weisberg*, 745 F.2d at 1485. Even if, as Plaintiff argues, "political interlocutors with whom HHS was communicating" used different terminology than internal HHS

employees, *see* Pl.'s MSJ Objs., ECF No. 51 at 10; given that
they were interlocutors with whom HHS was communicating as part
of its operations, this Court concludes there is nothing
unreasonable in HHS choosing to search the most common forms of
reference "used in the day-to-day operations of the Department":
the acronyms "ACA" and "AHCA", *see* Defs.' MSJ, ECF No. 25-4 at
6. As Magistrate Judge Robinson observed, "[a]ny document that
contained both an included term and an excluded term would still
have been responsive to the search." MSJ R. & R., ECF No. 49 at
9. Contrary to Plaintiff's assertion, HHS is not required to
"assert that other terms were not also used, or even that all of
the other proposed terms were used less frequently." Pl.'s MSJ
Objs., ECF No. 51 at 10.

Nor is it true that Magistrate Judge Robinson "did not
properly consider the available evidence showing that other
terms were, in fact, used by both agency personnel and members
of Congress." *Id.* at 11. Plaintiff itself states two sentences
before this assertion that Magistrate Judge Robinson "noted
HHS's concession that congressional and HHS staffers—including
HHS Secretary Tom Price—occasionally referred to the law as
"Obamacare," but nevertheless deemed the search adequate." *Id.*
The reason Magistrate Judge Robinson was unpersuaded by the
evidence was a lack of "significant evidence to suggest that
other documents could be found that do not contain one of the

search terms used." MSJ R. & R., ECF No. 49 at 9. This is in keeping with the legal standard, which holds that "purely speculative claims about the existence and discoverability of other documents," cannot rebut reasonably detailed agency affidavits related to the adequacy of the search, such as those provided in this case. *SafeCard Servs., Inc.*, 926 F.2d at 1200; *see also* Decl. of Michael Bell ("Bell Decl."), ECF No. 25-4 ¶ 7; Decl. of Thomas Hitter ("Hitter Decl."), ECF No. 25-2 ¶ 6.

The Court concludes that Magistrate Judge Robinson did not err in her R. & R., **ADOPTS** this portion of the R. & R., and **GRANTS** Defendants' Motion for Summary Judgment regarding the adequacy of HHS's search, *see* ECF No. 25.

### 2. The Redacted Documents Were Appropriately Withheld Under the Consultant Corollary

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption ensures that members of the public cannot obtain through FOIA records that would be "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Thus, in order to qualify for Exemption 5 privilege, the agency must: (1) meet the threshold requirement that the disputed documents be "intra-agency or interagency," and (2) establish that they are covered by a common law or statutory privilege that would exempt

them from civil discovery. *Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 573-74 (D.C. Cir. 1990).

Under the "consultant corollary," however, agencies retain the ability to seek advice from bodies outside the executive, where for the purpose of providing that advice, they are treated as agency employees and thus satisfy the threshold requirement. *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011). For an outside party to fall within the consultant corollary exception to the Exemption 5 threshold requirement, there are two pivotal conditions: (1) the outside party cannot provide self- interested advice to the agency, and (2) the agency must have solicited the advice from the party. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10-11 (2001); *Nat'l Inst. Military Justice v. U.S. Dep't of Defense* ("*NIMJ*"), 512 F.3d 677, 680 (D.C. Cir. 2008).

In particular, "communication that aids the agency's deliberative process [may] be protected as 'intra-agency'" under Exemption 5. *Judicial Watch, Inc. v. DOT*, 950 F. Supp. 2d 213, 218 (D.D.C. 2013); *see also NIMJ*, 512 F.3d at 681. Although the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has held that Congress is not an "agency" within the meaning of FOIA, *Dow Jones & Co, Inc.*, 917 F.2d at 574; "communications between an agency and Congress [sh]ould receive protection as intra-agency memoranda if they were 'part and

36

parcel of the agency's deliberative process.'" *Rockwell Int'l Corp. v. DOJ*, 235 F.3d 598, 604 (D.C. Cir. 2001) (quoting *Dow Jones*, 917 F.2d at 573-75).

### a. The Documents Are Intra-Agency Records

### i. Congress was Not Acting in Its Self-Interest

Magistrate Judge Robinson finds that in this Court, "the relevant inquiry is not whether the party was simply self-interested, but whether the advice provided by the consultant conflicts with the agency's ability to advance its own interests." MSJ R. & R., ECF No. 49 at 16. She concludes that Congress' members' interests in the documents at issue are not "adverse to the interests of the government, they *are* the interests of the government" since Congress was providing advice "in the interest of the American people" rather than its own self-interest. *Id.* Plaintiff objects that Magistrate Judge Robinson's approach, which it perceives as "requiring a FOIA requester to demonstrate that an outside consultant was acting 'adverse to its competitors' or 'adverse to the government,'" uses an inappropriately high bar for what constitutes an "independent interest" sufficient to defeat the application of the consultant corollary. Pl.'s MSJ Objs., ECF No. 51 at 15. Plaintiff instead interprets the caselaw as focusing on "whether or not the outside consultant had an 'independent interest' in the outcome of the agency's decisionmaking process." *Id.* at 16.

Defendants respond that American Oversight is attempting to broaden the reach of *Klamath*, and that an "an 'independent interest,' standing alone, is not enough to defeat the application of Exemption 5." Defs.' Opp'n MSJ Objs., ECF No. 57 at 15. The Court reviews Plaintiff's objection *de novo*.

The legal standard for self-interest under the consultant corollary is hotly debated. *Klamath* has spawned much discussion as to whether an independent interest on the part of the consultant is now disqualifying. *See Am. Oversight v. U.S. Dep't of Health & Hum. Servs.*, 380 F. Supp. 3d 45, 55 (D.D.C. 2019) [defendant hereinafter "HHS"]. There remains substantial uncertainty on the degree to which the D.C. Circuit has narrowed the scope of the consultant corollary. *See Am. Oversight v. United States Dep't of Transp.*, Civ. Act. No. 18-1272 (CKK), 2022 WL 103306, at *3 (D.D.C. Jan. 11, 2022) (collecting cases). One line of cases points out that the D.C. Circuit "has recognized that, under some circumstances, a consultant and an agency may share common goals such that, even if the consultant appears to be acting to foster its own interests, its actions might also be construed as aiding an agency process." *Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 111 (D.D.C. 2018) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1124-25 (D.C. Cir. 1989)); *see also Am. Oversight v. United States Dep't of the Treasury*, 474 F. Supp. 3d 251, 265 (D.D.C.

2020). Contrasting authority within this District, however, observes that "since *Klamath*, the [ ] Circuit has consistently reiterated the principle that the outside consultant must be a neutral party who is not representing its own interests" and that "it appears that the law in this Circuit does require that outside consultants lack an independent interest." *Am. Oversight v. HHS*, 380 F. Supp. 3d at 54 (citation and quotation marks omitted).

If a non-agency interlocutor must bring *no* divergent interest to bear, then the records at issue would lose their Exemption 5 protection. The *Am. Oversight v. HHS* court advocated for such an approach, while the *Am. Oversight v. Dep't of Treasury* and the *Am. Oversight v. Dep't of Transp.* courts rejected it. In line with the latter two cases, this Court declines to read *Klamath* as preventing Exemption 5 protection in this case. First, the *Am. Oversight v. HHS* court ultimately "put[] aside the narrow legal question of whether the mere existence of some independent interest in the topic on the part of the outsider is disqualifying" and instead found that "the record does not support a finding that the communications with Congress played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel." *Id.* (citation and quotation marks omitted). This fact alone renders the reasoning of *American Oversight* "unauthoritative dictum—

unnecessary to its holding and nonbinding upon this court." *Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*, 216 F.3d 1180, 1188 (D.C. Cir. 2000).

Second, "when discussing draft legislation, members of the two political branches may share the exact same goals and desire to further the exact same piece of legislation." *Am. Oversight v. Dep't of Transp.*, 2022 WL 103306, at *5. To that end, the record in this case reflects that the "redacted emails involve members of Congress and congressional staff of the Republican Party who shared an interest with agencies in the current Republican administration in working to repeal the ACA and replace it with the health care reform legislation that was under consideration." Slemrod Decl., ECF No. 25-3 ¶ 7. This common interest "stands in stark contrast to the parochial interests that troubled the *Am. Oversight v. HHS* court." *Am. Oversight v. United States Dep't of Transp.*, 2022 WL 103306, at *5.

Further, even if there were parts of the legislation where the interests of members were not "necessarily aligned," Pl.'s MSJ Objs., ECF No. 51 at 18; the consultant corollary would only be inapplicable if the interests were: (1) necessarily adverse; and (2) the members were competitors. *Klamath*, 532 U.S. at 14. The mere fact that "members of Congress are themselves people, with personal, professional, and political motivations," Pl.'s

MSJ Objs., ECF No. 51 at 18; is far from convincing since it would apply to any and every consultant who provides advice to an agency. While *Klamath* provides support for consultants not being "necessarily adverse" to each other, the Court is unaware of, and Plaintiff does not point to, any case law that requires the advice of different consultants [here members of Congress] to be *aligned* with each other. *See generally id.* Nor is there a requirement that consultants must "align with what would be best for the American people writ large." *Id.* at 18. Finally, the Court is unpersuaded that even if "HHS and OMB's congressional interlocutors all had interests in advancing the approach that best served their constituents," Pl.'s MSJ Objs., ECF No. 51 at 20; they were acting as "self-advocates at the expense of others seeking benefits inadequate to satisfy everyone." *Klamath*, 532 U.S. at 12. As Defendants point out, "it makes sense that representatives of a co-equal branch of government, who swore an oath to 'defend the Constitution of the United States' and to 'well and faithfully discharge the duties of the[ir] office,' would not have the kind of adverse interests that were at issue in *Klamath*. Defs.' Opp'n MSJ Objs., ECF No. 57 at 16. To reach the conclusion American Oversight is advocating for is to ignore that members of Congress may be solicited for advice by agencies *precisely because* they will advocate for their constituencies in the process of working with the Executive Branch on the common

goal of passing legislation, and thereby aid the agency's process. *See Judicial Watch*, 306 F. Supp. 3d at 111.  It also bears noting that while certain healthcare policies may better suit specific constituencies, the adoption thereof is not a zero-sum game of the sort at play in the water allocation rights in *Klamath*. 532 U.S. at 13.

In addition, the Court is unable to see the point or relevance of American Oversight's separation-of-powers argument. American Oversight appears to suggest that because the three branches of government are meant to serve as a check and balance on each other, Magistrate Judge Robinson erred in ostensibly believing that "almost by definition [] [Congress] shares interests and has a confidential consulting relationship with the executive branch agencies that would justify applying Exemption 5's protections to their discussions." Pl.'s MSJ Objs., ECF No. 51 at 19. The Court agrees that Magistrate Judge Robinson appears to represent both the interest of Congress and the Executive as "the interests of the government," MSJ R. & R., ECF No. 49 at 16-17; but sees no practical import from this for a separation of powers concern in the present scenario. As Defendants point out, "American Oversight has not identified a single congressional or executive power that would be usurped by holding that certain deliberative communications between the branches fall within Exemption 5," and instead seems to assume

that "because there are structural incentives for the branches to check each other, their interests can never be aligned when they choose to work within that structure to accomplish shared goals." Defs.' Opp'n MSJ Objs., ECF No. 57 at 18. Moreover, the Court is not adopting a reading, nor does Magistrate Judge Robinson conclude, that "the interests of Congress and the defendant agencies are sufficiently aligned to justify protecting their communications under the consultant corollary simply by virtue of the fact that they are both governmental entities." Pl.'s MSJ Objs., ECF No. 51 at 24. Magistrate Judge Robinson's conclusion, and this Court's finding that the threshold requirement has been met, is based on the fact that "Congress members were not providing advice in their own self-interest." MSJ R. & R., ECF No. 49 at 16.

### ii. Defendants Solicited The Advice From Congress

The second factor of the consultant corollary requires that the documents submitted by outside consultants (and sought to be exempted from disclosure) are actually solicited by the agency in question. *McKinley*, 647 F.3d 331 at 338; *see NIMJ*, 512 F.3d at 680-81 (finding that Exemption 5 applies to documents "submitted by non-agency parties in response to an agency's request for advice"); *Ryan v. Dep't of Justice*, 617 F.2d 781, 790-91 (D.C. Cir. 1980) (holding that Senators' responses to a

questionnaire from the DOJ were "intra-agency" records for
purposes of Exemption 5).

Magistrate Judge Robinson's findings as to which of the
communications at issue were solicited by Defendants are
somewhat unclear. She finds that both OMB and HHS solicited
information from Congress, *see* MSJ R. & R., ECF No. 49 at 17;
but then also states that "communications between Defendants and
Congress that do not directly relate to the requests for advice
and the relevant responses thereto are not covered by the
consultant corollary and are subject to disclosure," *id.* at 18.
Plaintiff points out that "the Magistrate Judge's recommendation
provides little guidance regarding *which* of the challenged
communications she determined 'directly relate to the requests
for advice,' and which do not." Pl.'s MSJ Objs., ECF No. 51 at
22. Plaintiff also argues that Magistrate Judge Robinson: (1)
"appears to improperly credit generic and conclusory assertions
in Defendants' declarations that lack the specificity required
to determine whether any particular communication is a covered
solicitation"; (2) "ignored the available evidence showing that
for many of the email exchanges at issue in this case, it was
*Congress* who was seeking advice or input from the agencies, and
not the opposite"; and (3) "erroneously ignored the broader
context of these communications, which establishes that the
communications primarily relate to a legislative deliberation

44

regarding the passage of a bill, and not internal executive branch deliberations." *Id.* CWM responds that "soliciting" input from an outsider does not require a formal, one-way request; rather, it can encompass a range of contexts, and Magistrate Judge Robinson's discussion of "agency solicitation" therefore accurately synthesizes the case law in this Circuit. Defs.' Opp'n MSJ Objs., ECF No. 57 at 20. While the first and third of American Oversight's three objections are adequately specific, the second is reiterated from Plaintiff's earlier pleadings. *See* Pl.'s XMSJ, ECF No. 30 at 20. Thus, the Court considers the first and third objection *de novo*, and the second for clear error.

Here, as Magistrate Judge Robinson notes, the consultations with Congress, in the case of the OMB, began when "OMB solicited information from Congressional personnel regarding the status of the AHCA throughout the drafting and debate process." Slemrod Decl., ECF No. 25-3 ¶ 13. HHS's correspondence with Congress began when HHS "sought feedback from Congress on legislative and administrative options for" health care reform, which Congress was considering at the time. Skrzycki Decl., ECF No. 25-5 ¶ 9. It is therefore not that case that these statements do not "establish that HHS and OMB specifically solicited advice, recommendations, or opinions from their congressional correspondents under an express understanding that the

communications were for the purpose of informing an internal executive branch decisionmaking process." Pl.'s MSJ Objs., ECF No. 51 at 22. Plaintiff argues that these "conclusory statements" "do not apply with equal force to every record in Defendants' productions," *id.*; but they are not required to, because so long as advice has been solicited, back-and-forth communications are part of a "fluid process." *Judicial Watch, Inc.*, 306 F. Supp. 3d at 113. The agency affidavits in this case, which are accorded a presumption of good faith, are far from conclusory and detail the role and purpose of the communications at issue, which both agencies establish they solicited. *See* Slemrod Decl., ECF No. 25-3 ¶¶ 8-22; Skrzycki Decl., ECF No. 25-5 ¶¶ 8-18; Decl. of Sarah C. Arbes ("Arbes Decl."), ECF No. 25-6 ¶¶ 7-9. The Court concludes that Magistrate Judge Robinson did not "improperly credit generic and conclusory assertions in Defendants' declarations." Pl.'s MSJ Objs., ECF No. 51 at 22.

Plaintiff also maintains that Magistrate Judge Robinson "ignored the available evidence showing that for many of the email exchanges at issue in this case, it was *Congress* who was seeking advice or input from the agencies, and not the opposite." Pl.'s MSJ Objs., ECF No. 51 at 22; *see also* Decl. of Sara Creighton ("Creighton Decl.."), ECF No. 30-3; Exhibit 9 (OMB Excerpts), ECF No. 30-3 at 61 (email chain where OMB

Director Mick Mulvaney writes to Representative Paul Ryan's
Policy Director Austin Smythe, "Austin . . . help me. What are
you specifically asking us to do?"); *id.* at 73 (email from
Representative Steve Scalise staffer Matt Bravo to OMB asking if
"it's possible to get Mr. Mulvaney to make some calls today?");
*id.* at 129 (staffer for Senator John Thune thanking OMB staffer
for his help); Creighton Decl. Ex. 10 (HHS Excerpts), ECF No.
30-3 at 280 (email in which Representative Kevin McCarthy's
Chief of Staff tells HHS employees that they "have been
incredibly helpful to us in this process"); Ex. B (HHS-Sept
2017-01621-23), ECF No. 27-2 at 51 (email in which congressional
staffer asked HHS for information and thanked them for their
help); Slemrod Decl., ECF No. 25-3 ¶ 17 (referring to technical
assistance "to assist Congress in drafting legislation").
However, Magistrate Judge Robinson specifically stated that
"[i]t is irrelevant whether Congress received help in return or
even initiated the contact between itself and the agencies; the
relevant question for this factor is whether the agency
established a consultant relationship with Congress by
soliciting their advice." MSJ R. & R., ECF No. 49 at 18 (citing
*McKinley*, 647 F.3d 331 at 338; *NIMJ*, 512 F.3d at 680-81).
Admittedly, while Magistrate Judge Robinson seemed to establish
that *some* communications are unprotected by the consultant
corollary because they do not relate to requests for advice, she

47

did not establish *which* communications are not covered.
Plaintiff disagrees that *any* communications are protected and
argues that Magistrate Judge Robinson "erroneously ignored the
broader context of these communications," Pl.'s MSJ Objs., ECF
No. 51 at 22. The Court agrees with Plaintiff's statement but
comes to the opposite conclusion as to coverage. The affidavits
provided by Defendants establish that HHS "engaged in
discussions and sought feedback from Congress on legislative and
administrative options for" health care reform. Skrzycki Decl.,
ECF No. 25-5 ¶ 9. This included daily staff meetings to
determine the agency's next steps for congressional outreach.
*Id.* ¶ 10. Further, "HHS had robust internal deliberations and
communicated with Congress about potential proposals and
strategy as Congress worked through draft legislations." *Id.* ¶
14. The feedback received through those discussions "contributed
to HHS' process for evaluating the potential rulemaking and
operational changes that might be necessary if a bill passed."
*Id.* ¶ 13. In addition, "HHS engaged with Congress to monitor and
build support for the AHCA." *Id.* ¶ 15. The communications
"included policy proposals and strategic discussions that
informed the agency's process in deciding between administrative
options and adjusting technical assistance provided to
Congress." *Id.* ¶ 20. In light of this detailed explanation, it
is clear that "Executive Branch decision-making about health

care reform was intertwined with congressional decision-making,"
Defs.' Opp'n MSJ Objs., ECF No. 57 at 21; and that the
communications at issue were "part and parcel of *the agency's*
deliberative process," *Dow Jones*, 917 F.2d at 575. *See also*
*Judicial Watch*, 950 F. Supp. 2d at 219 n.4 ("The fact that both
agency and non- agency may have mutually 'solicited' each
other's assistance . . . does not obscure the fact that agency
solicitation nevertheless occurred."). This conclusion in no way
has the effect of "encompassing nearly all intergovernmental
communications as purportedly 'intra-agency' communications."
MSJ R. & R., ECF No. 49 at 23. The legal standard is clear: only
communications that "are part and parcel of *the agency's*
deliberative process . . . remain intra-agency documents" for
purposes of Exemption 5. *Dow Jones*, 917 F.2d at 575. Defendants
have satisfactorily met their burden of showing that here.

### b. The Deliberative Process Privilege Prevents Disclosure in This Case, Except for Factual Information

The Exemption 5 deliberative process privilege exempts
certain intra-agency communications from being disclosed in
response to FOIA requests. The purpose of the deliberative
process privilege is to allow agency employees to "communicate
candidly among themselves," which would be impossible in a
scenario where every agency interaction could be subject to
surveillance. *Klamath*, 532 U.S. at 9. There are two requirements

for the deliberative process privilege to apply: (1) the
document must be predecisional; and (2) the document must be
deliberative. *McKinley*, 647 F.3d 331 at 339 (quoting *NIMJ*, 512
F.3d at 680 n.4).

### i. The Documents Are Predecisional

Documents are predecisional if they are generated for use
prior to a final agency decision on the matter. *See Coastal
States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C.
Cir. 1980) (refusing to characterize documents as
"'predecisional' simply because they play into an ongoing audit
process"); *100Reporters LLC v. U.S. Department of Justice*, 248
F. Supp. 3d 115, 151 (D.D.C. 2017)("[A]n agency must show that
the document was 'generated as part of a *definable* decision-
making process.'" (quoting *Gold Anti- Trust Action Comm., Inc.
v. Bd. Of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d
123, 135- 36 (D.D.C. 2011))). Documents can become subject to
disclosure "even if the document [was] predecisional at the time
it [was] prepared...if it is adopted, formally or informally, as
the agency position on an issue." *Coastal States*, 617 F.2d at
866.

Magistrate Judge Robinson finds that the documents in
question are predecisional, because the "Vaughn Indexes drafted
by Defendants, along with the affidavits provided by the staff
members of HHS and OMB, provide sufficient information of a

definable decisionmaking process for the Court to 'pinpoint an agency decision or policy to which the document[s] contributed.'" MSJ R. & R., ECF No. 49 at 20 (citing *Paisley*, 712 F.2d at 698). American Oversight objects that "the available evidence reveals that many of the records instead relate to *Congress's* decisionmaking process." Pl.'s MSJ Objs., ECF No. 51 at 25. Defendants respond that this argument "illustrates the false dichotomy that American Oversight repeatedly has tried to draw in this case: that an email must relate *either* to a congressional decision or to an Executive Branch decision, never both." Defs.' Opp'n MSJ Objs., ECF No. 57 at 24. The Court agrees with Defendants. The Court has already discussed the intertwined nature of congressional and Executive Branch decision making. *See supra.* As Defendants point out, the Slemrod declaration specifies four categories of OMB decisions about health care reform at issue during the relevant period and identifies the communications that contributed to those decisions. Slemrod Decl., ECF No. 25-3 ¶¶ 8, 10, 11, 13, 16, 18; *see also, e.g.*, Suppl. Hitter Decl., Ex. 1 ("OMB *Vaughn* Index") at Doc. No. 13, ECF No. 34-1 (explaining that an "analysis of draft health care legislative text provision-by-provision" contributed to a decision as to "which health care proposals to advocate for"). The Court concludes that Magistrate Judge

Robinson properly concluded the communications at issue are pre-decisional.

### ii. The Documents Are Deliberative

Documents are deliberative if they "reflect[] the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866 (explaining that this covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."). The agency must identify the specific deliberative process for which the documents at issue were created. *Coastal States*, 617 F.2d at 868; *see Paisley*, 712 F.2d at 698 (stating that the court must "be able to pinpoint an agency decision or policy to which [the] documents contributed"); *100Reporters*, 248 F. Supp. 3d at 152 (holding that documents submitted to DOJ for the purpose of helping deliberate whether plaintiff had satisfied its obligations under a plea agreement was insufficient specificity).

Magistrate Judge Robinson finds that the "[s]tatements in the affidavits suggesting a general deliberation on 'potential rulemaking and operational changes' or the agencies' 'legislative strategy' are not specific enough to satisfy the deliberative privilege standard." MSJ R. & R., ECF No. 49 at 21. Plaintiff objects to Magistrate Judge Robinson finding that *any*

of the documents are subject to the deliberative privilege standard, arguing that the declarations: (1) are not adequately specific; (2) fail to show the deliberative nature of the information; and (3) fail to demonstrate that many of the communications relate to internal agency deliberations at all, rather than the manifestly congressional decisionmaking necessary to the passage of legislation by Congress. Pl.'s MSJ Objs., ECF No. 51 at 28. All three of these objections are reviewed for clear error, since the first is not adequately specific, and the latter two are repeated from Plaintiff's initial filing. *See* Pl.'s XMSJ, ECF No. 30 at 36-37. Plaintiff also argues that "the Magistrate Judge's recommendation fails to clearly identify those records, if any, as to which the Magistrate Judge believes HHS and OMB have described the role of the redacted communications in agency deliberations with sufficient detail to qualify for protection under the deliberative process privilege." MSJ R. & R., ECF No. 49 at 27.

Defendants respond that Magistrate Judge Robinson's conclusion "rests on a characterization of some of the redacted emails that lacks important context provided in the agencies' declarations." Defs.' Opp'n MSJ Objs., ECF No. 57 at 25. Defendants reiterate their stance that the D.C. Circuit has rejected a "black-and-white approach to deliberative information," and that the withheld documents are relevant to

*both* Congress's drafting of legislation, as well as the
Executive Branch's role in the policymaking process. *Id.* at 25-
26. Defendants add that "American Oversight overlooks that the
deliberative process privilege 'serves to protect the
deliberative process itself, not merely documents containing
deliberative material.'" *Id.* at 26 (citing *Mapother v. DOJ*, 3
F.3d 1533, 1537 (D.C. Cir. 1993)). The Court agrees with
Defendants. As a threshold matter, the Court notes the validity
of several of Plaintiff's objections regarding the lack of
specificity at various points in Magistrate Judge Robinson's R.
& R. *See, e.g.*, MSJ R. & R., ECF No. 49 at 20-21. Plaintiff
points out, for instance, that in the context of her discussion
of deliberative process privilege, Magistrate Judge Robinson
"describes the evidence put forth by the agencies, and then
offers a conditional conclusion" that does "nothing more than
describe the legal standard that an agency must meet." Pl.'s MSJ
Objs., ECF No. 51 at 27-28. In the discussion below, the Court
specifies which information falls within the privilege and which
does not. As to Magistrate Judge Robinson's conclusion that some
statements in the affidavits are not clear enough, the Court
finds clear error. Admittedly, some statements suggest
deliberation on "potential rulemaking and operational changes"
or the agencies' legislative strategy. *See* Hitter Decl. Ex. 1 at
Doc. No. 1, ECF No. 25-2; Skrzycki Decl. ¶ 13. The Court finds

54

*Formaldehyde*, 889 F.2d at 1124-25 to be instructive here. In *Formaldehyde,* an agency had submitted a draft report to a medical journal for publication, and the D.C. Circuit held that the comments of two outside referees on that report were protected from disclosure by Exemption 5. 889 F.2d at 1120. Although the comments of the outside referees were for their own process in determining which articles to publish, the Court found that "HHS personnel acting in light of the agency's Congressional mandate must regularly rely on the comments of expert scientists to help them evaluate the readiness of agency work for publication." *Id.* at 1125.

As Defendants argue, the same is true here. Discussion on "potential rulemaking and operational changes," as well as "legislative strategy," is "quintessentially deliberative when an agency like OMB is 'involved in the iterative process of drafting legislation' as part of its process for 'provid[ing] the President with analysis and recommendations' concerning whether to ultimately sign health care reform legislation." Defs.' Opp'n MSJ Objs., ECF No. 57 at 26 (citing Slemrod Decl., ECF No. 25-3 ¶ 10); *see also Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F. Supp. 3d 120, 128 (D.D.C. 2016) (draft documents protected by deliberative process privilege). These discussions, while aiding Congress in drafting legislation, are also relevant to the Executive Branch's own

decision making, including by informing their choices on "which health care proposals to advocate for[.]" OMB Vaughn Index at Doc. No. 13, ECF No. 34-1. A joint deliberative process does not require that that "the interests of all of those entities were aligned," Pl.'s Reply MSJ Objs., ECF No. 59 at 16; nor is it clear to the Court, contrary to Plaintiff's assertion, that the interests of all entities were aligned in *Formaldehyde*, since the agency's draft report still had to go through the journal's independent process. 889 F.2d at 1120. What is relevant for the consultant corollary is the question of self-interest, which has already been addressed *supra.* The Court concludes that the redacted material is simply part of the "agency give-and-take of the deliberative process." *Vaughn*, 523 F.2d at 1144.[4] In addition, the Court is cognizant that the deliberative process privilege "serves to protect the deliberative process itself, not merely documents containing deliberative material." *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citations omitted). As in *Formaldehyde*, where the D.C. Circuit was concerned that "release of reviewers' editorial comments would very likely have a chilling effect on either the candor of potential reviewers of

---

[4] In light of this finding, the Court finds as moot Defendants' objection to the "Report and Recommendation's suggestion that the agencies' affidavits and *Vaughn* indexes fail to sufficiently identify a specific agency deliberative process for some of the redacted communications." Defs.' MSJ Objs., ECF No. 52 at 6.

government-submitted articles or on the ability of the
government to have its work considered for review at all," 889
F.2d at 1120; this Court is similarly concerned that disclosing
the materials would reveal details of agency deliberations and
impair the process of decision-making. *See* Slemrod Decl., ECF
No. 25-3 ¶ 23 (disclosure of withheld materials would "limit[]
the President's ability to rely on" OMB's advice).

The Court's concern, and its finding as to deliberative
process privilege, does not, however, extend to factual
information within the redacted material described below.
Defendants argue that "factual information is protected by the
deliberative process privilege when it 'is so inextricably
intertwined with the deliberative sections of documents that its
disclosure would inevitably reveal the government's
deliberations.'" Defs.' Opp'n MSJ Objs., ECF No. 57 at 21
(citing *Abramyan v. DHS*, 6 F. Supp. 3d 57, 64 (D.D.C. 2013)
(quoting *CREW v. DHS*, 514 F. Supp. 2d 36, 46 (D.D.C. 2007))).
While Defendants correctly identify the relevant standard, they
have not established that the facts in question are
"inextricably intertwined *with the deliberative sections of
documents*," *id.*; and as Plaintiff points out, the unredacted
portions of the records suggest the opposite. *See, e.g.*,
Creighton Decl. Ex. 9 (OMB Excerpts) at OMB-American Oversight-
000678 (email chain regarding announcement that a Republican

member of Congress intended to vote against the bill); Arbes
Decl. ¶ 8(b) ("Congress and HHS shared up-to-date information
regarding legislative developments."); Slemrod Decl. ¶ 10 (OMB
relied on communications "to receive information from Congress
that was used to advise the President about health care
reform"), ¶ 13 ("OMB solicited information from Congressional
personnel regarding the status of the AHCA throughout the
drafting and debate process"), ¶ 17 ("OMB must solicit from
Congress the most current information as to both the legislative
language and the intent behind it."). While these documents may
have been used during deliberation, they "simply reveal nothing
deliberative in nature regarding the *agency's* deliberations."
Pl.'s Reply MSJ Objs., ECF No. 59 at 16. The Court concludes
that the deliberative process privilege does not apply to such
factual information. *See Cause of Action Inst. v. DOJ*, No. 17-
1423 (JEB), slip op. at 19 (D.D.C. Sept. 13, 2018) (rejecting
the privilege where the redacted communications "offer no
insight into the agency's position or anything else that clearly
involves the formulation or exercise of . . . policy-oriented
*judgment* or the process by which *policy* is formulated")
(citations and quotation marks omitted). Accordingly, Defendants
are ordered to release any redacted information that is factual
in nature, and not "inextricably intertwined with the

deliberative sections of documents." *CREW*, 514 F. Supp. 2d at 46 (citation omitted).

The Court concludes that Magistrate Judge Robinson did not err in her analysis of the consultant corollary except for her finding that some parts of the redacted documents did not satisfy the deliberative process privilege. As the Court clarified, only factual information is not protected by the privilege. The Court hereby **ADOPTS** the portion of the R. & R. addressing Exemption 5, except as to the deliberative process privilege analysis, *see* MSJ R. & R., ECF No. 49 at 14-19; and **GRANTS** Defendants' Motion for Summary Judgment regarding the applicability of the deliberative process privilege, *see* ECF No. 25; except as to factual information.

### 3. Defendants Inappropriately Redacted Meeting Locations and Names of Attendees

American Oversight rightly points out that Magistrate Judge Robinson's R. & R. did not address its arguments as to certain redactions included within the calendar entries produced by HHS and OMB. Pl.'s XMSJ, ECF No. 30 at 28-30. The Court therefore considers Plaintiffs arguments *de novo*. Specifically, Plaintiff argues that "HHS improperly withheld talking points from briefing materials prepared for HHS officials in advance of meetings with members of Congress." *Id.* at 37. Plaintiff also contends that "OMB improperly redacted portions of the titles of meetings on several calendar entries." *Id.* at 38. Finally,

Plaintiff argues that "OMB improperly redacted meeting locations and the names of attendees under Exemption 5." *Id*. Defendants respond that "briefing materials prepared in advance of meetings or calls that HHS Secretary Price had with members of Congress are subject to the deliberative process privilege." Defs.' MSJ Reply, ECF No. 34 at 33. As to the redacted titles, Defendants argue that they are subject to the deliberative process privilege because they reveal details of agency deliberations and could chill future government employees from engaging in frank discussion. *Id.* at 34-35. Defendants add that OMB properly redacted names of Congress members where "who attends the meeting is itself a question of legislative strategy" and "exposes the deliberative process of the President and / or his advisors". *Id.* at 35. The Court considers each of the three challenges, and responses thereto, in turn. First, contrary to Plaintiff's assertion, HHS has plainly met its burden to establish that the talking points were deliberative. As Defendants point out, in both the cases American Oversight cites on this point, the agency did nothing more than label a document "[draft] talking points." *See Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 265 (D.D.C. 2004); *Elec. Privacy Info. Ctr. [EPIC] v. DOJ*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007). Here, by contrast, HHS's Vaughn Index plainly grounded the briefing materials in its deliberative process. *See* Ex. 6

60

(HHS Vaughn Index), Bates No. HHS-July 2017-000002-000003, ECF
No. 25-4 at 39. However, the analysis does not end there. Even
if the records were pre-decisional and deliberative at the time
of their creation, if those materials were adopted as the agency
position or were, in fact, later used and therefore were shared
outside the agency, then the agency waived any privilege with
respect to them. *See Judicial Watch*, 297 F. Supp. 2d at 265–66.
This Court has specifically noted that the "likelihood of . . .
adoption is particularly high in the case of 'talking points.'"
*EPIC v. DOJ*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007). Here, HHS
states that there is "minimal risk that Secretary Price adopted
a public or agency-wide position in the course of a private
phone call with a member of Congress." Defs.' MSJ Reply, ECF No.
34 at 34. But as Plaintiff highlights, this statement does not
tell the Court whether the talking points were officially
adopted or not. *See* Pl.'s XMSJ Reply, ECF No. 37 at 21 n.9.
Second, as to the calendar entries, the Court is guided by
precedent that the deliberative process privilege "serves to
protect the deliberative process itself, not merely documents
containing deliberative material." *Mapother*, 3 F.3d at 1537
(citations omitted). The topic of discussion can itself disclose
sensitive issues, and contrary to Plaintiff's argument, may
include recommendations or express opinions. *But see Vaughn*, 523
F.2d at 1144. To that end, as Defendants argue, where the titles

61

or body of a calendar entry would themselves disclose details of agency deliberations, it could certainly "chill[] future government employees from engaging in frank discussions," *Morley v. CIA*, 699 F. Supp. 2d 244, 256 (D.D.C. 2010) (emphasis omitted), *aff'd in part, vacated in part by* 466 Fed. App'x 1 (D.C. Cir. 2012), both by discouraging meetings on sensitive topics, or from describing those topics in any calendar entries (and thereby preventing advance preparation). The Court concludes that Defendants' affidavits establish the applicability of Exemption 5. Third, the Court is cognizant that "even when the contents of meeting minutes are properly withheld under Exemption 5, the basic information about the meeting, including "the date and time of the meeting, *the names of . . . members present*, and the names of observers" remains nonexempt and, where reasonably segregable, must be released. *Judicial Watch v. Dep't of the Treasury*, 796 F. Supp. 2d 13, 29 (D.D.C. 2011) (emphasis added); *cf. Judicial Watch v. Dep't of State*, 875 F. Supp. 2d 37, 45 (D.D.C. 2012). Defendants make a compelling argument that revealing locations and names of attendees "is a different matter if who attends the meeting is itself a question of legislative strategy." Defs.' MSJ Reply, ECF No. 34 at 35. However, absent any disclosure of the *contents* of meetings, Defendants overreach in arguing that "revealing who was at the meeting reveals opinions within the agency about

legislative strategy and thereby exposes the deliberative process itself." *Id.* (internal citation and quotation marks omitted); *see also* Mem. Opinion at 1, 10-16, *Property of the People v. OMB*, Civ. Act. No. 17-1677 (RC), ECF No. 20, (D.D.C. Sept. 14, 2018) (finding that OMB could not rely on the deliberative process privilege to redact the "names of meeting attendees" and the "locations of meetings" contained in calendar entries). Similarly, the Court is not persuaded that revealing when or where "particular high-level figures in the Executive Branch chose to wade into deliberations over health care reform exposes the deliberative process of the President and/or his advisors." *Id.* Defendants attempt to distinguish this case on the basis that "the analysis is different when the attendees were 'strategically selected' in a manner that reveals suggestions within the Executive Branch as to which stakeholders were particularly important or persuadable in the health care reform debate." Defs.' NSA Opp'n, ECF No. 61 at 3. But even if American Oversight knows that "these meetings concerned the administration's deliberations regarding health care reform," *id.* at 2; the Defendants have not persuaded the Court that revealing exactly who the invitees to the meetings were would "expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Mem.

63

Op., *Property of the People v. OMB*, No. 17-cv-1677, ECF No. 20 at 10-11 (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

The Court concludes that Defendants are required to disclose the names of attendees and locations of meetings, and **GRANTS** Plaintiff's Motion for Summary Judgment regarding the disclosure of such information, *see* ECF No. 30 at 37; except as to calendar entry titles and talking points.

For the talking points at issue, Defendants are directed to submit an additional affidavit clarifying with certainty whether or not they were adopted as the agency's position or were later used and shared outside the agency, such that any associated privilege was waived. *See Judicial Watch*, 297 F. Supp. 2d at 265-66.[5]

### 4. *In Camera* Review is Not Warranted

Courts have "'broad discretion' to decide whether *in camera* review is necessary." *100Reporters LLC*, 248 F. Supp. 3d at 166; *see id.* at 154 (stating that "the district court . . . has

---

[5] Plaintiff objects to Magistrate Judge Robinson's suggestion that Plaintiff's be given further opportunity to justify their redactions. *See* Pl.'s MSJ Objs., ECF No. 51 at 29. Defendants also object to the need for further affidavits, although for the opposite reason: arguing that their present affidavits are sufficient to establish "with the required specificity, the applicable deliberative process for any of the redacted emails." *See* Defs.' MSJ Objs., ECF No. 52 at 3. Neither of these objections is relevant here, since the talking points were not considered by Magistrate Judge Robinson.

several options, including inspecting the documents *in camera*, requesting further affidavits, or allowing the plaintiff discovery" (quoting *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998))). *In camera* review is available, but not required, for a district court in its assessment of an agency's exemption claims pursuant to a FOIA request. *See* 5 U.S.C. § 552(a)(4)(B); *Larson v. Dep't of State*, 565 F.3d 897, 869-70 (D.C. Cir. 2009). Courts review an agency's decision to withhold documents de novo, and the burden is placed on the agency to demonstrate by affidavit the applicability of the exemption. *See* § 552(a)(4)(B); *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1386 (D.C. Cir. 1979). Where: (1) the agency's affidavits "provide specific information sufficient to" establish the applicability of the exemption, (2) the "information is not contradicted in the record," and (3) "there is no evidence of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents." *Larson*, 565 F.3d at 870 (quoting *Hayden*, 608 F.2d at 1387). Where the agency's affidavits have satisfied the burden of proof, "*in camera* review is neither necessary nor appropriate." *Id.* at 863, 870 (quoting *Hayden*, 608 F.2d at 1387) (holding that the district court did not abuse its discretion by declining to review *in camera* documents where the agency's affidavit described with "reasonably specific detail the reason for non-disclosure"). Neither "mere allegation[s] of agency

misrepresentation" nor "past agency misconduct in other unrelated cases" undermine an agency's affidavits. *Hayden*, 608 F.2d at 1387. Magistrate Judge Robinson finds that the agencies have provided "reasonably detailed and uncontradicted evidence sufficient to establish the applicability of Exemption 5 for most of the documents" through their *Vaughn* Indexes and the accompanying affidavits, and that *in camera* review is therefore unnecessary, especially given the lack of evidence as to bad faith. MSJ R. & R., ECF No. 49 at 24. Magistrate Judge Robinson also recommends that this Court order Defendants to provide additional declarations regarding the communications that were used for congressional (as opposed to agency) purposes, or that "lack the necessary specificity." *Id.* at 24–25. Plaintiff objects that "it is not clear from the R&R which particular records the Magistrate Judge believes are in need of supplemental detail." Pl.'s MSJ Objs., ECF No. 51 at 51. Plaintiff also reiterates its argument from its summary judgment motion, arguing that "DOJ's willingness to defend the facially unreasonable redactions in [] [a different] case should at least give this Court reason to probe further before accepting the assertions made in this case without additional scrutiny." *Id.* Defendants respond that the Magistrate Judge has already considered Defendants' citation to a different case and appropriately concluded that it has "no effect on this Court's

assessment of the request for *in camera* review of the redacted documents." Defs.' Opp'n MSJ Objs., ECF No. 57 at 30. Defendants add that additional affidavits are unnecessary given the detail of the agencies' existing submissions. *Id.* The Court agrees.

Plaintiff attempts to recast the Magistrate Judge's finding, stating that "Plaintiff does not claim that the production in that case means that the agencies here necessarily acted with similar bad faith." Pl.'s MSJ Objs., ECF No. 51 at 51. However, by arguing that the Court should consider the "DOJ's willingness to defend the facially unreasonable redactions in that case," *see id.*; that is precisely what American Oversight is doing, in clear contradiction of the relevant standard, which states that "past agency misconduct in other unrelated cases" does not undermine an agency's affidavits. *Hayden*, 608 F.2d at 1387. The Court finds no clear error in Magistrate Judge Robinson's finding and concludes *in camera* review is unnecessary.  The Court, however, sees no reason for further affidavits (except as to the redacted talking points for meetings) given its holdings *supra.* The Court therefore **DENIES** Plaintiff' Motion for Summary Judgment regarding *in camera* review, *see* ECF No. 30 at 39.

### 5. Further Discovery is Not Warranted

"Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 29, 35 (D.D.C. 2002) (citing *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 54, 65 (D.D.C. 2002)). The party requesting discovery must submit an affidavit which must meet the following conditions: "(1) It must outline the particular facts [Plaintiff] intends to discover and describe why those facts are necessary to the litigation…; (2) it must explain why [Plaintiff] could not produce the facts in opposition to the motion ...; and (3) it must show the information is in fact discoverable." *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (quoting *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012)). Magistrate Judge Robinson concludes that the agencies' declarations were "largely sufficient," and that Plaintiff did not describe its need for discovery in sufficient detail, and it is therefore appropriate to decide this case on summary judgment without discovery. MSJ R. & R., ECF No. 49 at 26. American Oversight objects that there are ambiguities and inconsistencies in the record evidence that preclude granting summary judgment and render discovery necessary. Pl.'s MSJ

Objs., ECF No. 51 at 52. The Court finds no clear error in
Magistrate Judge Robinson's finding, since, as Defendants point
out, American Oversight's affidavit is devoid of any explanation
as to *why* the facts it seeks "are necessary" to this litigation.
Defs.' Opp'n MSJ Objs., ECF No. 57 at 31. American Oversight's
request for discovery, *see* Pl.'s XMSJ, ECF No. 30 at 53; is
therefore **DENIED**.

## IV.  Conclusion

For the foregoing reasons, Magistrate Judge Robinson's
R. & R. as to the Motion for Judgment on the Pleadings, *see* ECF
No. 48; is **ADOPTED**. In addition, Magistrate Judge Robinson's
R. & R. as to the Motion for Summary Judgment, *see* ECF No. 49;
is **ADOPTED IN PART** and **REJECTED IN PART**. The portions of the
R. &. R that are rejected are: (1) Magistrate Judge Robinson's
finding that some statements in the affidavits are not specific
enough to establish deliberative process privilege and
Magistrate Judge Robinson's related recommendation that the
agency submit further affidavits, *see* R. & R., ECF No. 49 at 21;
and (2) the portions related to CWM's Motion for Summary
Judgment, which the Court finds as moot. Plaintiff American
Oversight's Motion for Judgment on the Pleadings, *see* ECF No.
45; is **DENIED**. Defendants HHS and OMB's Motion for Summary
Judgment, *see* ECF No. 25; is **GRANTED IN PART** as to the adequacy
of its search and the validity of Exemption 5 for the records at

69

issue but **DENIED IN PART** as to the factual information in the documents, as well as the meeting attendee names and locations associated with redacted calendar entries. Plaintiff American Oversight's Cross-Motion for Summary Judgment, *see* ECF No. 30; is **GRANTED IN PART** as to the factual information and redacted meeting locations and attendee names, and **DENIED IN PART** as to the calendar entries covered by Exemption 5, as well as the requests for in-camera review and discovery. The Motion is **HELD IN ABEYANCE** as to the talking points for which supplemental briefing has been ordered.

The parties shall submit, by no later than June 27, 2022, a Joint Status Report regarding the status of the disclosures and supplemental briefing ordered by this Court.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan**
**            United States District Judge**
**            May 27, 2022**