**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-827-EGS |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**MOTION FOR SUMMARY JUDGMENT OF THE COMMITTEE ON WAYS AND
MEANS OF THE U.S. HOUSE OF REPRESENTATIVES**

Pursuant to Federal Rule of Civil Procedure 56, Defendant-Intervenor the Committee on Ways and Means of the U.S. House of Representatives respectfully moves for summary judgment with respect to its affirmative defense on the ground that four documents at issue in this case (OMB-American Oversight-000988 to 001029; HHS—Sept 2017—01621 to 01623; HHS—Sept 2017—01624 to 01627; HHS—Sept 2017—01628 to 01635) are Congressional records and therefore not subject to the Freedom of Information Act, 5 U.S.C. § 552.  In support of its motion, the Committee submits the following memorandum of points and authorities.

Respectfully submitted,

*/s/ Matthew B. Berry*
Matthew B. Berry (D.C. Bar No. 1002470)
    *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
    *Deputy General Counsel*
Brooks M. Hanner (D.C. Bar No. 1005346)
    *Associate General Counsel*
Bradley Craigmyle (IL Bar No. 6326760)
    *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Matthew.Berry@mail.house.gov

*Counsel for the Committee on Ways and Means
of the U.S. House of Representatives*

October 1, 2024

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-827-EGS |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT OF THE COMMITTEE ON WAYS AND MEANS OF THE
U.S. HOUSE OF REPRESENTATIVES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

I.     The allegations in Plaintiff's complaint ............................................................ 2

II.    The Court orders a production schedule, and Defendants produce,
among other documents, partially redacted Congressional records
(the Legended Documents) .............................................................................. 3

III.   The Legended Documents ................................................................................ 4

IV.   The Committee intervenes and moves for summary judgment,
and the Magistrate Judge recommends granting the Committee's motion ....... 6

V.    This Court grants the Agencies' motion for summary judgment
and thus finds the Committee's motion moot ................................................... 8

VI.   The D.C. Circuit reverses and remands on the exemption issue ....................... 9

ARGUMENT ...................................................................................................................... 10

I.     Congressional records are not subject to FOIA ............................................... 10

II.    The Legended Documents are Congressional records ..................................... 15

      A.    The Committee manifested a clear intent to control
the Legended Documents ....................................................................... 16

      B.    The legend—which was affixed to the documents themselves
and gave direct instructions to the Agencies—specifically
limited the disclosure of the Legended Documents ............................... 20

      C.    The Committee manifested its intent to control
the Legended Documents in a timely fashion ........................................ 21

CONCLUSION ................................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Cases**

*Am. C.L. Union v. CIA* (*ACLU I*),
    105 F. Supp. 3d 35 (D.D.C. 2015) ...............................................................................11, 21

*\*Am. C.L. Union v. CIA* (*ACLU II*),
    823 F.3d 655 (D.C. Cir. 2016) ...................................1, 7, 10, 11, 12, 14, 15, 16, 17, 18, 21

*Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*,
    830 F.3d 667 (D.C. Cir. 2016) .......................................................................................17

*Am. Oversight v. HHS*,
    101 F.4th 909 (D.C. Cir. 2024) .......................................................................................9

*Cause of Action v. Nat'l Archives & Recs. Admin.*,
    753 F.3d 210 (D.C. Cir. 2014) .......................................................................................11

*Cause of Action Inst. v. DOJ*,
    282 F. Supp. 3d 66 (D.D.C. 2017) .................................................................................17

*\*Goland v. CIA*,
    607 F.2d 339 (D.C. Cir. 1978) ...........................................................................11, 12, 13, 15

*Holy Spirit Ass'n for the Unification of World Christianity v. CIA*,
    636 F.2d 838 (D.C. Cir. 1980),
    *judgment vacated in part on other grounds*, 455 U.S. 997 (1982) .............................11, 18, 21

*Judicial Watch, Inc. v. U.S. Secret Serv.*,
    726 F.3d 208 (D.C. Cir. 2013) ...............................................................................10, 11, 12

*\*Paisley v. CIA*,
    712 F.2d 686 (D.C. Cir. 1983),
    *opinion vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984)............11, 13, 14, 20

*\*United We Stand Am., Inc. v. IRS*,
    359 F.3d 595 (D.C. Cir. 2004) .......................................7, 11, 12, 14, 16, 17, 18, 19, 20, 21

**Statutes**

5 U.S.C. § 551(1)(A)....................................................................................................12

**INTRODUCTION**

As the Magistrate Judge found, four of the documents at issue in this Freedom of Information Act (FOIA) case bear legends that manifest a clear Congressional intent to retain control of them.  This means that the documents, which we call the Legended Documents,[1] are Congressional records not subject to disclosure under FOIA.

This dispute was originally between Plaintiff American Oversight and two Executive Branch agencies, the U.S. Department of Health and Human Services (HHS) and the Office of Management and Budget (OMB) (collectively, Defendants or Agencies).  But after learning that the Agencies had produced to Plaintiff redacted versions of the Legended Documents—that is, Congressional records—the Committee on Ways and Means of the U.S. House of Representatives (Committee) intervened.  It did so both to prevent Plaintiff from compelling production of unredacted versions of these documents and to advance the House's institutional interest in the proper treatment of its documents.

The test for determining whether a document is a Congressional record asks whether Congress manifested its intent to control the document.  *See, e.g.*, *Am. C.L. Union v. CIA*, 823 F.3d 655, 662-63 (D.C. Cir. 2016) (*ACLU II*).  The Committee manifested that intent here in a straightforward way: it attached to the documents at issue a legend instructing the Agencies that the documents are Committee records.  One document is an email chain that a Committee staffer sent to an OMB employee.  The staffer included a legend in her message that states "[t]his document … remain[s] subject to the Committee's control, and [is] entrusted to your agency

---

[1] The Legended Documents (OMB-American Oversight-000988 to 001029; HHS—Sept 2017—01621 to 01623; HHS—Sept 2017—01624 to 01627; HHS—Sept 2017—01628 to 01635) are attached as Exhibits A-D to the Declaration of Molly Fromm (Fromm Decl.), which we have included with this filing.

only for use in handling this matter."  Comm. Statement of Material Facts Not in Dispute (SOF)

¶ 4.  The three other documents are email chains that an HHS employee sent to Committee

staffers.  In those email chains, the HHS employee responded to earlier Committee messages that

included a legend.  That legend states, in relevant part, that "[a]ny such documents created or

compiled by an agency in connection with any response to this Committee document or any

related Committee communications, including but not limited to any replies to the Committee,

are also records of the Committee and remain subject to the Committee's control."  SOF ¶¶ 9,

10.  By attaching this legend, the Committee manifested its intent to control these Agency replies

to the Committee's messages.

     When the Committee initially moved for summary judgment, the Magistrate Judge (on

referral) concluded that the Legended Documents are Congressional records and thus not subject

to FOIA.  This Court ultimately entered judgment in the Agencies' favor on other grounds and

therefore did not consider the merits of the Committee's motion.  Now, on remand, this Court

should likewise find that the Legended Documents are Congressional records and thus grant the

Committee's motion.

## BACKGROUND

### I.    The allegations in Plaintiff's complaint

     This action arises out of two FOIA requests that Plaintiff submitted to HHS and OMB.

Specifically, on March 15, 2017, Plaintiff submitted a request to HHS seeking, from January 20,

2017, to the date of the search:

> (1) All communications, meeting notices, meeting agendas, informational material, draft legislation, talking points, or other materials exchanged between HHS and any members of Congress or congressional staff relating to health care reform.

> (2) All calendar entries for the Secretary, any political or SES appointees in the Secretary's office, and the Acting Assistant Secretary for Legislation, or anyone maintaining calendars on behalf of these individuals, relating to health care reform.

2

> For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments.

Compl., Ex. A at 2, ECF No. 1-1.  Plaintiff then submitted a similar request to OMB seeking, from January 20, 2017, to the date of the search:

> (1) All communications, meeting notices, meeting agendas, informational material, draft legislation, talking points, or other materials exchanged between OMB and any members of Congress or congressional staff relating to health care reform.

> (2) All calendar entries for the Director, any political or SES appointees in the Director's office, and the Acting Head of Legislative Affairs, or anyone maintaining calendars on behalf of these individuals, relating to health care reform. For calendar entries created in Outlook or similar programs, the documents should be produced in "memo" form to include all invitees, any notes, and all attachments.

Compl., Ex. B at 2, ECF No. 1-2.

Plaintiff sought expedited processing of both requests.  Compl., Ex. A at 6-7 & Ex. B at 6-8.  On April 4, 2017, OMB sent a letter to Plaintiff denying the request for expedited processing.  Compl., Ex. C, ECF No. 1-3.

Plaintiff filed this lawsuit on May 4, 2017.  It challenged the Agencies' failure to grant expedited processing (Counts I through III), the adequacy of the Agencies' search (Count IV), and the Agencies' purported withholding of non-exempt records (Count V).  *See* Compl. at 8-12, ECF No. 1.

## II.   The Court orders a production schedule, and Defendants produce, among other documents, partially redacted Congressional records (the Legended Documents)

The same day it filed the complaint, Plaintiff moved for a preliminary injunction to compel Defendants to expedite the processing of the requests and produce all requested records without delay.  *See* Pl.'s Mot. for Prelim. Inj., ECF No. 2.

At a subsequent status hearing, the Court directed the parties to confer in good faith about Defendants' search terms and to provide a recommendation for further proceedings.  *See* May 10, 2017 Minute Order.  Based on the parties' recommendations, the Court ordered HHS to

review and process 11,000 pages of records and OMB to review and process 2,348 pages of records.  *Id.*  The Court further ordered a rolling production schedule that required Defendants to review the documents and produce any non-exempt and responsive material.  *Id.*  Finally, the Court set a schedule for briefing the parties' cross-motions for summary judgment.  *Id.*

Defendants produced on a rolling basis numerous documents in response to the Court's order.  Included within the final round of this production, on September 5, 2017, were the Legended Documents, which Defendants produced with redactions, even though they are Congressional records not subject to FOIA.

## III.    The Legended Documents

There were four Legended Documents in the Agencies' productions: one from OMB (Fromm Decl. Ex. A, OMB-American Oversight-000988 to 001029[2]) and three from HHS (Fromm Decl. Exs. B-D, HHS—Sept 2017—01621 to 01623; HHS—Sept 2017—01624 to 01627; HHS—Sept 2017—01628 to 01635).  Each of the four documents is an email chain with multiple email messages, and two of the chains contain at least one attachment.

The OMB document is an email chain that was sent on April 4, 2017, from Emily Murry, who was a Committee staff member at the time, to Joseph Grogan, who was the Associate Director of Health Programs at OMB at the time.  SOF ¶¶ 1-3.  Ms. Murry's email is at the top of a chain of emails between her and Mr. Grogan that Mr. Grogan initiated.  *Id.* ¶ 2 & Ex. A at OMB-American Oversight-000988.  When Ms. Murry sent her April 4 message, she necessarily included and retransmitted the earlier messages in the email chain with her April 4 message.  *See* Fromm Decl., Ex. A at OMB-American Oversight-000988.  She also included three attachments

---

[2] The Committee is not moving for summary judgment as to OMB-American Oversight-001030.

to her message.  *See* Fromm Decl., Ex. A at OMB-American Oversight-000989 to 1029.  At the bottom of Ms. Murry's April 4 email is the following legend:

> This document and any related documents, notes, draft and final legislation, recommendations, reports, or other materials generated by the Members or staff of the Committee on Ways and Means are records of the Committee, remain subject to the Committee's control, and are entrusted to your agency only for use in handling this matter.  Any such documents created or compiled by an agency in connection with any response to this Committee document or any related Committee communications, including but not limited to any replies to the Committee, are also records of the Committee and remain subject to the Committee's control.  Accordingly, the aforementioned documents are not "agency records" for purposes of the Freedom of Information Act or other law.

SOF ¶ 4.  The legend was not automatically generated.  *See* Fromm Decl. ¶ 10.  Rather, the Committee had authorized staffers to include the footer when deemed appropriate, and they manually pasted the legend into emails to do so.  *Id.*  No other individual emails in this chain included the legend.  *See* Fromm Decl., Ex. A at OMB American Oversight 000988.

The HHS documents were all sent on April 1, 2017, from Sarah Arbes, who was an HHS employee at the time, to several then-members of the Committee's staff, including Emily Murry and Stephanie Parks.  SOF ¶¶ 5-8.  In each of the three HHS documents, Ms. Arbes's email is at the top of a chain of emails between her and Committee staff members.  *Id.* ¶¶ 7-8.  In two of the three documents (Fromm Decl., Exs. B and D), Ms. Arbes's April 1 message responded directly to an email from Ms. Parks (dated April 1 and March 30, respectively) that includes the same manually inserted legend quoted above.  *Id.* ¶¶ 9, 10.  In the third document (Fromm Decl., Ex. C), the April 1 message from Ms. Parks that contains the manually inserted legend is included earlier in the email chain, and Ms. Arbes's April 1 message did not respond directly to Ms. Parks's legended message.  *Id.* ¶ 9.  Each of Ms. Parks's legended emails included and retransmitted earlier messages from Committee staff that did not themselves include the legend.

*See id.* ¶¶ 9, 10.  And one of her emails included an attachment.  *See* Fromm Decl., Ex. D at HHS—Sept 2017—01631 to 1635.

**IV.    The Committee intervenes and moves for summary judgment, and the Magistrate Judge recommends granting the Committee's motion**

Ten days after Defendants produced redacted versions of the Legended Documents, the Committee filed an unopposed motion to intervene so it could argue that the Legended Documents are Congressional records not subject to disclosure under FOIA.  *See* Comm. Mot. to Intervene, ECF No. 19.  The Court granted the Committee's unopposed motion.  *See* Sept. 26, 2017 Minute Order.

**A.**  The Committee then moved for summary judgment solely with respect to the Legended Documents.  *See* Comm. Mot. for Summ. J., ECF No. 27.  It explained that the Legended Documents are Congressional records—and thus not agency records subject to FOIA—because the Committee "manifested a clear intent to control" the four email chains (and attachments) by including the legend in certain email messages.  *See id.* at 8-11 (citation omitted).  The legend made clear that the documents are Committee records that remain subject to the Committee's control.  *See id.*  This Court ultimately referred the Committee's motion (and the parties' cross-motions for summary judgment) to a Magistrate Judge.  *See* Mar. 8, 2018 Minute Order.

The Magistrate Judge agreed with the Committee and recommended granting its motion and denying Plaintiff's cross-motion.  *See* R. & R. at 27, ECF No. 49.  Applying the D.C. Circuit's Congressional-records test, the Report and Recommendation concluded that the Legended Documents "are not subject to disclosure under FOIA" based on a "line of reasoning" that the D.C. Circuit has followed "for decades."  *Id.* at 2, 10.  In doing so, it explained that the legend is "substantially similar to the instructions the D.C. Circuit Court held to be sufficient in

6

establishing congressional intent" to control documents. *Id.* at 11 (first citing *ACLU II*, 823 F.3d at 665; then citing *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 600 (D.C. Cir. 2004)). Finally, the Report and Recommendation found that the legend identified the documents it covered—it was, after all, "affixed to the documents" themselves—and specifically conveyed to the Agencies the Committee's intent to retain control and restrict production. *Id.* at 13-14.

**B.** The Report and Recommendation also analyzed the merits of the Agencies' withholdings, which Plaintiff and the Agencies addressed in their cross-motions for summary judgment. As relevant here, it concluded that the Agencies had properly withheld certain portions of the Legended Documents under Exemption 5, which exempts from FOIA interagency or intra-agency documents that would not be discoverable in civil litigation. *See id.* at 2, 14.[3] It thus recommended granting the Agencies' motion for summary judgment "with respect to the documents described in the *Vaughn* Indexes as being both solicited by the agencies *and* sufficiently related to specific agency deliberations." *Id.* at 26.

**C.** Finally, the Magistrate Judge recommended denying Plaintiff's motion for judgment on the pleadings.[4] *See generally* R. & R. In that motion, Plaintiff argued that the Committee, despite intervening as a Defendant, had failed to identify a cause of action that allowed it to participate in the case. *See* Pl.'s Mot. for J. on Pleadings at 4-8, ECF No. 45. According to

---

[3] Although Congress is not an "agency" under FOIA, a doctrine called the "consultant corollary" exception allows Executive Branch agencies to seek advice from outside bodies and then treats those bodies as agency employees when they provide that advice. *Id.* at 14-15. This exception applied, the Report and Recommendation found, "to communications directly related to the agencies' solicitation for advice and the responses thereto." *Id.* at 2. As for the underlying privilege, the Report and Recommendation concluded that the deliberative process privilege applies "to those documents relating to a deliberative process described with sufficient detail" in the Agencies' *Vaughn* Indexes. *See id.* at 22.

[4] The Court referred this motion to the Magistrate Judge on July 24, 2018. *See* July 24, 2018 Minute Order.

Plaintiff, the Committee should have filed a separate suit under the Administrative Procedure Act against the Agencies. *Id.* at 7-9. The Report and Recommendation rejected these arguments. *See* R. & R. at 4-9, ECF No. 48.

**V.     This Court grants the Agencies' motion for summary judgment and thus finds the Committee's motion moot**

This Court agreed that the Committee is properly acting as an Intervenor-Defendant and denied Plaintiff's motion for judgment on the pleadings, *see* Mem. Op. at 20-29, ECF No. 81, but it ultimately did not reach the merits of the Committee's motion for summary judgment, *see id.* at 3 (finding the Committee's motion moot). Rather, the Court concluded that the Agencies had properly withheld material, including in the Legended Documents, under Exemption 5 (except for any factual information) and granted the Agencies' motion for summary judgment. *See id.* at 59; *id.* at 69-70 ("Defendants HHS and OMB's Motion for Summary Judgment, *see* ECF No. 25; is **GRANTED IN PART** as to … the validity of Exemption 5 for the records at issue but **DENIED IN PART** as to the factual information in the documents …."). The Court then found the Committee's motion moot "in view of [its] grant of summary judgment to Defendants." *Id.* at 3.[5]

Plaintiff ultimately appealed (as relevant here) the Court's judgment in favor of the Agencies on the Exemption 5 withholdings. *See* Notice of Appeal, ECF No. 86.

---

[5] In doing so, the Court necessarily concluded that none of the material withheld from the Legended Documents is factual information that must be disclosed. Had the Court found that there was factual information in the Legended Documents that must be disclosed, the Committee's motion—which argued that Plaintiff "is not entitled to any relief as to" the Legended Documents, *see* Comm. Mot. for Summ. J. at 11—could not have been moot.

**VI.     The D.C. Circuit reverses and remands on the exemption issue**

On appeal, the D.C. Circuit held that Exemption 5 does not apply to the documents at

issue[6] and thus reversed and remanded for further proceedings.  *See Am. Oversight*, 101 F.4th at

925 ("[W]e reverse the district court's grant of summary judgment to HHS and OMB on the

applicability of Exemption 5 to the records at issue …; direct that American Oversight's motion

for summary judgment be granted insofar as the communications between the agencies and

Congress are not covered by Exemption 5 …; and remand for further proceedings consistent with

our opinion.").

Unlike the Exemption 5 withholding issue, the Committee's argument—that the

Legended Documents are Congressional records not subject to FOIA—was not before the D.C.

Circuit.  Indeed, although the court noted that the Agencies did not dispute on appeal that the

"communications at issue are agency records subject to FOIA," *id.* at 919, it "express[ed] no

view on the merits" of the Committee's argument that the documents are Congressional records,

*id.* at 919 n.3.

On remand, the Agencies agreed to re-process the documents they had previously

withheld in whole or in part, including the Legended Documents, consistent with the D.C.

Circuit's opinion.  *See* Joint Status Report at 1-2, ¶¶ 3-4, 6, ECF No. 92.  The Committee

notified the parties that it intended to renew its Congressional-records argument, and the

Agencies agreed not to produce the Legended Documents while the Committee's renewed

motion is pending.  *See id.* at 2-3, ¶¶ 3-4, 7-8.  The Committee now renews its argument.

---

[6] This, according to the court, was "[b]ecause the record shows Congress had an
independent stake in [negotiations over potential healthcare reform legislation] and did not
provide disinterested advice as an agency employee would."  *Am. Oversight v. HHS*, 101 F.4th
909, 912 (D.C. Cir. 2024).  The consultant corollary exception thus did not apply.  *See id.* at 920-
23.

**ARGUMENT**

**I.     Congressional records are not subject to FOIA**

**A.**  "[S]ubject to certain statutory exemptions, FOIA requires federal agencies to make

*agency records* available to the public upon reasonable request."  *ACLU II*, 823 F.3d at 661

(emphasis added).  However, "not all documents in the possession of a FOIA-covered agency are

'agency records' for the purpose of that Act."  *Id.* at 662 (quoting *Judicial Watch, Inc. v. U.S.

Secret Serv.*, 726 F.3d 208, 216 (D.C. Cir. 2013)).  Typically, courts apply a four-factor test "to

determine whether an agency has sufficient control over a document to make it an 'agency

record'":

> [1] the intent of the document's creator to retain or relinquish control over the
> records; [2] the ability of the agency to use and dispose of the record as it sees fit;
> [3] the extent to which agency personnel have read or relied upon the document;
> and [4] the degree to which the document was integrated into the agency's record
> system or files.

*Id.* (quoting *Judicial Watch*, 726 F.3d at 218).

This test, however, "does not apply where the documents were obtained from Congress,"

as the Report and Recommendation pointed out.  R. & R. at 9; *see also ACLU II*, 823 F.3d at 662

(noting that the four-factor test "does not apply to documents that an agency has either obtained

from, or prepared in response to a request from, a governmental entity not covered by FOIA: the

United States Congress" (quoting *Judicial Watch*, 726 F.3d at 221)).  Rather, when an agency

possesses a document obtained from Congress or prepared in response to a communication from

Congress, "the answer to the question whether the document is an 'agency record' subject to

disclosure under FOIA 'turns on whether Congress manifested a clear intent to control the

document.'"  *ACLU II*, 823 F.3d at 662-63 (citation omitted).

Congress's manifestation of its intent to control the document and keep it confidential is

dispositive, meaning the view of an agency that possesses a Congressional document does not

factor into the analysis.  *See Goland v. CIA*, 607 F.2d 339, 348 n.48 (D.C. Cir. 1978) (explaining that when a document "bears clear indicia of a congressional purpose to ensure secrecy," that "indicia of Congress' continuing control … are dispositive of a document's 'congressional' status"); *see also Cause of Action v. Nat'l Archives & Recs. Admin.*, 753 F.3d 210, 215 (D.C. Cir. 2014) ("In this line of cases, we have analyzed only the transferring entity's intent to control the documents and their future use.").  This makes sense: when "Congress has manifested its own intent to retain control, then the agency—by definition—cannot lawfully 'control' the documents … and hence they are not 'agency records.'"  *See Paisley v. CIA*, 712 F.2d 686, 693 (D.C. Cir. 1983) (footnote omitted), *opinion vacated in part*, 724 F.2d 201 (D.C. Cir. 1984); *ACLU II*, 823 F.3d at 664 (same); *Judicial Watch*, 726 F.3d at 222 (same); *United We Stand*, 359 F.3d at 600 (same); *Am. C.L. Union v. CIA*, 105 F. Supp. 3d 35, 45 (D.D.C. 2015) (*ACLU I*) (same).

Notably, this test does not require "Congress to act in a particular way in order to preserve its FOIA exemption for transferred documents."  *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838, 842 (D.C. Cir. 1980), *judgment vacated in part on other grounds*, 455 U.S. 997 (1982).  Indeed, the *only* relevant question is whether there has been "some clear assertion of congressional control" over the document.  *Id.*  Nor does the test require Congress to "give contemporaneous instructions when forwarding congressional records to an agency."  *Id.*  Congress's power to control its documents, thus removing them from FOIA's scope, is not so limited: the authority is lost only "if there is a request for documents at a time when Congress has not designated the documents as falling within congressional control."  *Id.* at 841.

This deferential test arises from "special policy considerations" that "counsel in favor of according due deference to Congress' affirmatively expressed intent to control its own

documents." *ACLU II*, 823 F.3d at 662 (quoting *Judicial Watch*, 726 F.3d at 221).  The "policy considerations unique to the congressional context" include, most fundamentally, "Congress's right to keep its own materials confidential." *United We Stand*, 359 F.3d at 599.  That "authority [is] rooted in the Constitution, longstanding practice, and current congressional rules." *Goland*, 607 F.2d at 346 (footnotes omitted).  Beyond that, "Congress exercises oversight authority over the various federal agencies, and thus has an undoubted interest in exchanging documents with those agencies to facilitate their proper functioning in accordance with Congress' originating intent." *Id.*; *see also United We Stand*, 359 F.3d at 599 (same).  "Holding otherwise … would force Congress 'either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role.'" *United We Stand*, 359 F.3d at 599 (quoting *Goland*, 607 F.3d at 346).  Finally, "where Congress has intentionally excluded a governmental entity from" FOIA, *Judicial Watch*, 726 F.3d at 225, as it did when it excluded itself from FOIA's definition of "agency," *see* 5 U.S.C. § 551(1)(A), the D.C. Circuit "ha[s] been unwilling to conclude that documents or information of that entity can be obtained indirectly, by filing a FOIA request with an entity that is covered under that statute," *Judicial Watch*, 726 F.3d at 225.

**B.**  D.C. Circuit precedent shows the wide variety of circumstances in which Congress has sufficiently manifested an intent to retain control of Congressional records in the possession of Executive Branch agencies.  For example, in *Goland v. CIA*, 607 F.2d 339 (D.C. Cir. 1978), the D.C. Circuit held that a transcript of a confidential Congressional hearing that was in the CIA's possession for thirty years was not an agency record subject to FOIA.  *Id.* at 347.  The court relied on the fact that, "[w]hen received by the CIA, the [t]ranscript bore the typewritten marking 'Secret' on its interior cover page," a marking that "appear[ed] to have been appended at the time the [t]ranscript was made."  *Id.*  The court therefore concluded "that the Hearing

Transcript is not an 'agency record' but a congressional document to which FOIA does not apply," because "on all the facts of the case Congress' intent to retain control of the document is clear." *Id.* at 348.  Under these circumstances, "the decision to make the transcript public should be made by [Congress], not the recipient agency."  *Id.* at 347.  Indeed, the court highlighted the Committee's unilateral authority to make that decision.  *Id.* at 348 n.48 (explaining that these "indicia of Congress' continuing [c]ontrol … are dispositive of a document's 'congressional' status").

The D.C. Circuit has repeatedly reaffirmed the principles enunciated in *Goland* in later cases.  In *Paisley v. CIA*, 712 F.2d 686 (D.C. Cir. 1983), *opinion vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984), for example, the court noted that it "has followed the standards set forth in *Goland* … for determining under what conditions documents in the possession of an agency may nonetheless be congressional documents, as opposed to agency records, and so be exempt from disclosure under FOIA."  *Id.* at 692.  *Paisley* reiterated that the dispositive issue is whether Congress has manifested its intent with sufficient specificity: "*Goland*'s explicit focus on Congress' intent to control (and not on the agency's) reflects those special policy considerations which counsel in favor of according due deference to Congress' affirmatively expressed intent to control its own documents," thereby "safeguard[ing] Congress' long-recognized prerogative to maintain the confidentiality of its own records as well as its vital function as overseer of the Executive Branch."  *Id.* at 693 n.30.  *Paisley* also emphasized that before Congressional communications can qualify as agency records under FOIA, "the agency to whom the FOIA request is directed must have *exclusive* control of the disputed documents."  *Id.* at 693 (emphasis added).  And where "Congress has manifested its own intent to retain control"

of certain records, the agency cannot "lawfully 'control'" them, so they are not "agency records" subject to FOIA.  *Id.* (footnotes omitted).

Likewise, in *United We Stand America, Inc. v. IRS*, 359 F.3d 595 (D.C. Cir. 2004), the D.C. Circuit held that portions of a document created by and in the possession of the IRS were not an agency record subject to FOIA, because Congress had manifested its intent to control that information.  *Id.* at 605.  There, the requester sought "a document the [IRS] created in response to" a letter from the Joint Committee on Taxation.  *Id.* at 597.  The Joint Committee's letter contained a legend stating that "[t]his document is a Congressional record and is entrusted to the Internal Revenue Service for your use only" and "may not be disclosed without the prior approval of the Joint Committee."  *Id.*  The D.C. Circuit held that the Joint Committee had sufficiently manifested its intent to control not only the Joint Committee's letter request but also "the portions of the [IRS] response that would reveal that request"—even though the Joint Committee's legend did not explicitly mention any IRS response.  *Id.* at 605.[7]

Most recently, in *American Civil Liberties Union v. CIA*, 823 F.3d 655 (D.C. Cir. 2016), the D.C. Circuit held that a report of the Senate Select Committee on Intelligence that was in the CIA's possession was not an agency record subject to FOIA.  *Id.* at 667-68.  There, the report itself contained no legend or confidentiality stamp, and in fact the Select Committee had transmitted the report to the President in 2014 with a letter stating that it "should be made available within the CIA and other components of the Executive Branch for use as broadly as

---

[7] The court also provided guidance on how Congress could manifest its intent to control replies to Congressional communications: "[i]f the Joint Committee intended to keep confidential not just 'this document' but also the IRS response, it could have done so by referring to 'this document and all IRS documents created in response to it.'"  *Id.* at 601.  As we explain below, and as the Report and Recommendation recognized, the Committee here followed the court's guidance.

appropriate to help make sure that this experience is never repeated." *Id.* at 667.  However, at

the start of its investigation in 2009, the Select Committee had sent a letter to the CIA stating that

"any other notes, documents, draft and final recommendations, reports or other materials

generated by Committee staff or Members, are the property of the Committee," and that "[t]hese

documents remain congressional records in their entirety and disposition and control over these

records, even after the completion of the Committee's review, lies exclusively with the

Committee." *Id.* at 665 (emphasis omitted).  According to the court, the "expansive language" in

this letter clearly manifested the Select Committee's intent to retain control of the report, so the

report was "a congressional document that is not subject to disclosure under FOIA." *Id.* at 665,

667-68.

The court made clear that, to retain control over documents, Congress need not give

contemporaneous instructions to an agency to preserve any prior expressions of intent to control

them, a proposition already "rejected … in *Holy Spirit*." *Id.* at 666; *see also Goland*, 607 F.2d at

347 n.45 (explaining that "[s]ince it is Congress' intent to maintain secrecy, and not Congress'

conformance with the procedural niceties of classification, that makes [a record] a

'Congressional document,'" details such as "the identity of the classifier, the date on which the

document was classified, etc., are irrelevant" in determining whether a document is a

congressional record).

## II.    The Legended Documents are Congressional records

Under these D.C. Circuit precedents, the four Legended Documents at issue here are

Congressional records.  Indeed, the Committee has manifested its intent to control these

documents in the most straightforward way possible: by including a legend in its

communications with the Agencies clearly stating its intent to retain control over the

Committee's communications with the Agencies and the Agencies' responses.  SOF ¶¶ 4, 9, 10.

By including the legend in the communications themselves, and by expressly instructing the

Agencies that the documents remain under the Committee's control and are not subject to FOIA,

the Committee specifically limited the Agencies' ability to disclose the documents.  And the

Committee did so well before Plaintiff submitted its FOIA request, which is all the D.C. Circuit

requires from a timing perspective.

### A.      The Committee manifested a clear intent to control the Legended Documents

*OMB Document.*  The Committee has "manifested a clear intent to control" the OMB

document (Fromm Decl., Ex. A, OMB-American Oversight-000988 to 001029).  *See ACLU II*,

823 F.3d at 663.  This document was sent from a Committee staff member to an OMB employee.

SOF ¶¶ 1-3.  The Committee staff member's April 4, 2017 message contained the legend that

states "[t]his document … [is a] record[] of the Committee, remain[s] subject to the Committee's

control, and [is] entrusted to your agency only for use in handling this matter."  *Id.* ¶ 4.  The

document, of course, included the earlier messages in the email chain that the Committee staffer

included and retransmitted with her April 4 message.  *See* Fromm Decl., Ex. A at OMB-

American Oversight-000988.

As the Report and Recommendation pointed out, the Committee's notification here "is, in

relevant part, substantially similar to the instructions the D.C. Circuit Court held to be sufficient

in establishing congressional intent in *ACLU v. CIA* and *United We Stand*."  R. & R. at 11, ECF

No. 49; *see also ACLU II*, 823 F.3d at 665 (holding that the following instruction manifested the

Select Committee's intent to control: "[a]ny … reports or other materials generated by

Committee staff or Members[] are the property of the Committee ….  These documents remain

congressional records in their entirety …."); *United We Stand*, 359 F.3d at 597 (same for this

instruction: "[t]his document is a Congressional record and is entrusted to the [IRS] for your use only.  This document may not be disclosed without the prior approval of the Joint Committee." (citation omitted)).  In fact, the Committee's manifestation of intent here is even stronger than in *ACLU*.  There, the court held that the "expansive language" in that legend clearly established the Select Committee's intent to retain control over the Select Committee's subsequent report transmitted to the President *five years later*, even though the report itself contained no legend. *ACLU II*, 823 F.3d at 665, 667-68.  Here, by contrast, the OMB document itself bears the legend. *See United We Stand*, 359 F.3d at 600 (holding that the Joint Committee legend provided "sufficient indicia of congressional intent to control" the Joint Committee's letter request).

To be sure, there are individual email messages within the OMB document that do not themselves include the legend, but that is not relevant to the Congressional-record analysis.  As explained above, the Committee staffer's April 4 email retransmitted all the earlier messages in the email chain.  The Agency processed and indexed the entire email chain as a single record, *see* Decl. of Thomas Hitter, Ex. 1 at 7, ECF No. 25-2 (*Vaughn* Index for Fromm Decl., Ex. A at OMB-American Oversight-000988), consistent with the reality that email chains are stored and accessed as unified records.  This means that entire email chain is just one "record" for FOIA purposes. *See Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 678-79 (D.C. Cir. 2016) (stating that if an agency "identifies a particular document or collection of material—such as a chain of emails—as a responsive 'record,'" in response to a FOIA request, then the entire chain is considered a "record" for purposes of FOIA; *Cause of Action Inst. v. DOJ*, 282 F. Supp. 3d 66, 70 (D.D.C. 2017) (describing how an agency produced an email chain "as a single record" under FOIA in light of it being a "grouping of information").  And the

Committee manifested its unambiguous intent to control that record by sending it to the Agency with the legend.

*HHS Documents.*  The Committee has likewise "manifested a clear intent to control" the HHS documents at issue (Fromm Decl., Exs. B-D, HHS—Sept 2017—01621 to 01623; HHS—Sept 2017—01624 to 01627; HHS—Sept 2017—01628 to 01635).  *See ACLU II*, 823 F.3d at 663 (citation omitted).  These documents were sent from an HHS employee to Committee staff members.  SOF ¶¶ 5-8.  In two of those documents (Fromm Decl., Exs. B and D), the HHS employee was responding directly to a Committee message that included the legend.  *Id.* ¶¶ 9-10.  In the third (Fromm Decl., Ex. C), a Committee message with the legend was included earlier in the email chain, although it was not the message to which the HHS employee directly responded.  *Id.* ¶ 9.

As relevant here, the legend states that "[a]ny such documents created or compiled by an agency in connection with any response to this Committee document or any related Committee communications, including but not limited to any replies to the Committee, are also records of the Committee and remain subject to the Committee's control."  *Id.* ¶¶ 9-10.  The legend's plain text thus covers documents the Agency "created or compiled … in connection with any response to th[e] Committee document or any related Committee communications."  *Id.*

And the law is clear that Congress may manifest its intent to control not only documents that an agency has obtained from Congress but also documents that an agency has "prepared in response to a request from" Congress.  *See ACLU II*, 823 F.3d at 662.  In *United We Stand*, the D.C. Circuit noted that prior case law had "recognized the possibility that agency-created documents could in fact become congressional records."  359 F.3d at 599 (citing *Holy Spirit Ass'n*, 636 F.2d at 842-43).  Indeed, the court there reiterated that principle, holding that the

portions of the IRS response to a Joint Committee request "that would reveal that request" were Congressional records. *Id.* at 605. Given the "limited scope" of the legend used by Joint Committee in that case, which did not assert Congressional control over responses, the D.C. Circuit concluded that the other portions of the IRS response were not Congressional records. *Id.* at 600-01, 605. The court made clear, however, that "[i]f the Joint Committee intended to keep confidential not just 'this document' but also the IRS response, it could have done so by referring to 'this document and all IRS documents created in response to it'" in its legend. *Id.* at 601.

Here, the Committee followed precisely the guidance set forth in *United We Stand*. Its legend asserts control over (1) the document to which it is affixed ("this document") and (2) "[a]ny such documents created or compiled in connection with any response," including "any replies to the Committee." *See* SOF ¶¶ 4, 9-10. Indeed, as the Report and Recommendation noted, given the Committee's participation in *United We Stand*, "it seems likely" that the language at issue here "is a direct result of the court's decision in [*United We Stand*]. This lends support to the claim that Congress intended to retain control over such documents." *See* R. & R. at 11-12 n. 4, ECF No. 49.

In sum, the Committee has manifested a clear intent to control the HHS documents, and D.C. Circuit case law compels the conclusion that those documents are Congressional records and thus not subject to FOIA.[8]

---

[8] The HHS Documents, like the OMB Document, include individual email messages that do not themselves include the legend. That is irrelevant for the same reason that it is irrelevant to the OMB Document's analysis. The Agency treated each of the HHS email chains as a single record. *See* Decl. of Michael Bell, Ex. 6 at 49-50, ECF No. 25-4 (*Vaughn* Index for Fromm Decl., Ex. B, Ex. C, and Ex. D at HHS—Sept 2017—01628 to 01630). The question, then, is whether the Committee manifested its intent to control each of the records. For the reasons explained above, it did.

**B.    The legend—which was affixed to the documents themselves and gave direct instructions to the Agencies—specifically limited the disclosure of the Legended Documents**

The Committee left no ambiguity over which documents it was manifesting its intent to control: it included the legend in the Legended Documents themselves.  As the Report and Recommendation put it, "[t]he legends are particular to the documents themselves because they are affixed to the documents."  *See* R. & R. at 13, ECF No. 49.

The Committee was equally clear with its instructions to the Agencies: it explained that the documents "remain subject to the Committee's control, and are entrusted to your agency only for use in handling this matter."  *See* SOF ¶¶ 4, 9, 10.  Thus, "[n]ot only do the instructions in this case appear on the documents," the Report and Recommendation observed, "they are several sentences long, expressly asserting Congress's intent to retain control over the documents and explicitly restricting the production of the documents in response to a FOIA request."  *See* R. & R. at 14, ECF No. 49.  "[T]he Committee's manifestation was not based on a general understanding of confidentiality with no external indicia affixed to the documents," *id.*, which the D.C. Circuit has found insufficient, *see United We Stand*, 359 F.3d at 602; *see also Paisley*, 712 F.2d at 694 (rejecting government's attempt to "rely on an exchange of correspondence between the [Select Committee] and the CIA as proof of the existence of a 'pre-existing agreement' that any and all documents exchanged between the CIA and the [Select Committee] would require review and approval by the Committee prior to public disclosure").  Rather, it was based on express instructions attached to the very documents over which the Committee manifested its control.

As the Report and Recommendation concluded, "[t]he Committee's instructions are therefore sufficiently specific to limit the disclosure of the records."  *See* R. & R. at 14, ECF No. 49.

**C.      The Committee manifested its intent to control the Legended Documents in a timely fashion**

The Committee manifested its intent to control the Legended Documents in real time while it was communicating with the Agencies.  *See* SOF ¶¶ 4, 9-10.  This necessarily means, as the Report and Recommendation concluded, that the Committee gave its instructions to the Agencies "well in advance of the request from Plaintiff" and thus satisfied any timing requirement.  *See* R. & R. at 13, ECF No. 49.

On timing, D.C. Circuit precedent is clear that Congress need not manifest its intent at the exact moment when a document is created or transmitted.  *See Holy Spirit*, 636 F.2d at 842 (rejecting the argument "that Congress must give contemporaneous instructions when forwarding congressional records to an agency"); *see also ACLU I*, 105 F. Supp. 3d at 47 (rejecting the argument that "any evidence of congressional control 'must be contemporaneous with the transmission of the document'" (citation omitted)).  This is unsurprising.  After all, Congress may manifest its intent to control agency-created responses to Congressional requests, *see, e.g.*, *United We Stand*, 359 F.3d at 601, and this would be impossible if Congress had to manifest its intent to control when the agency created the response or transmitted it to Congress.  Thus, any claim that communications that happen before Congress manifests its intent to control cannot be Congressional records is, to borrow from the Report and Recommendation, "not the rule the D.C. Circuit has set forth."  *See* R. & R. at 12-13, ECF No. 49.  To be sure, Congress cannot rely on mere "post-hoc objections to disclosure" to manifest its intent to control.  *See United We Stand*, 359 F.3d at 602; *ACLU II*, 823 F.3d at 664.  Here, of course, the Committee did no such thing,

making clear its intent well before the Plaintiff filed its FOIA request.  Rather, it included the legend simultaneously with its exchange of emails with the Agencies.  SOF ¶¶ 4, 9-10.

Furthermore, even if Congress must assert its control either before a document is created or at the time when the document is transmitted, the Committee did that here.  *First*, the Committee manifested its intent to control the OMB document at the time that it was created and transferred to OMB: when the Committee staffer sent that document to OMB, she included the legend in her transmittal email.  *Id.* ¶ 4.  *Second*, the Committee asserted its control over the HHS documents before they were created: the HHS employee sent each of the HHS documents to Committee staff, and she did so in response to earlier emails from Committee staff that included the legend.  *Id.* ¶¶ 5-10.

## CONCLUSION

For these reasons, the Legended Documents (OMB-American Oversight-000988 to 001029; HHS—Sept 2017—01621 to 01623; HHS—Sept 2017—01624 to 01627; HHS—Sept 2017—01628 to 01635) are Congressional records and therefore not subject to FOIA. Accordingly, Plaintiff is not entitled to any relief as to these documents, and the Court should grant summary judgment in favor of the Committee as to its affirmative defense.

Respectfully submitted,

*/s/ Matthew B. Berry*
Matthew B. Berry (D.C. Bar No. 1002470)
   *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
   *Deputy General Counsel*
Brooks M. Hanner (D.C. Bar No. 1005346)
   *Associate General Counsel*
Bradley Craigmyle (IL Bar No. 6326760)
   *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Matthew.Berry@mail.house.gov

*Counsel for the Committee on Ways and Means
of the U.S. House of Representatives*

October 1, 2024